## In re LANGE.

### (District Court, N. D. Iowa, E. D.   January 10, 1899.)

BANKRUPTCY—EXEMPTIONS—LIFE INSURANCE POLICY.

A policy of insurance on the life of a bankrupt, having a cash surrender value payable to the bankrupt himself, or to his estate or personal representatives, passes to and vests in his trustee as assets of the estate in bankruptcy, subject to the right of the bankrupt to redeem the same by paying to the trustee its surrender value, notwithstanding that a statute of the state (Code Iowa, § 1805) provides that the proceeds of such policies shall be exempt from liability for the debts of the assured, and although section 6 of the bankruptcy act declares that "this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws," for the general language of section 6 is limited and restrained, in this instance, by the specific provision of section 70, cl. 5, that the bankrupt, on paying or securing to the trustee the cash surrender value of such a policy, may "continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings; otherwise the policy shall pass to the trustee as assets."

In Bankruptcy.

Submitted on petition of creditors praying a review of the ruling of the referee upon the question whether an endowment policy owned by the bankrupt is wholly exempt under the provisions of the bankrupt act.

Henderson, Hurd, Lenehan & Kiesel, for creditors.

Bowen & Fitzpatrick, for bankrupt.

SHIRAS, District Judge.   In the certificate of the referee submitting the question at issue to the court the facts are stated to be as follows:   Hugo A. Lange, who has been duly adjudged to be a bankrupt on his own petition, is the holder of an endowment policy in the Mutual Benefit Life Insurance Company, issued under date of December 6, 1892, and payable in 15 years, the present surrender value of which is the sum of $422.72.   The bankrupt claims that this policy in its entirety is exempt from liability for his debts, under the provisions of section 1805 of the Code of Iowa, which declares that "the proceeds of an endowment policy payable to the assured on attaining a certain age shall be exempt from liability for any of his debts"; whereas on behalf of the creditors it is claimed that under the provisions of section 70 of the bankrupt act the policy in question will pass to the trustee as part of the assets of the estate, unless the bankrupt avails himself of the right to pay or secure to the trustee the amount of the surrender value of the policy as provided for in section 70.   On behalf of the bankrupt reliance is placed upon the provisions of section 6 of the bankrupt act, which declares "that this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state

wherein they have had their domicile, for the six months or the greater portion thereof immediately preceding the filing of the petition." If this were the only provision of the act bearing upon the question, there would be no doubt as to its solution, but such is not the case. In section 70 it is declared that the trustee of the estate shall become vested by operation of law with the title of the bankrupt "except in so far as it is to property which is exempt to all; * * * (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him, provided that when any bankrupt shall have an insurance policy which has a cash surrender value payable to himself, his estate or personal representatives, he may, within thirty days after the cash surrender value has been ascertained, and stated to the trustee, by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings otherwise the policy shall pass to the trustee as assets." It cannot be questioned that the latter part of the quoted section declares that all insurance policies having a cash surrender value payable to the bankrupt, his estate or personal representatives, form part of the assets passing to the trustee, subject to the right of the bankrupt to secure to himself the future benefits thereof by paying to the trustee a sum equal to the surrender value of the policy, which represents the amount which the trustee would ordinarily realize, if the policy should pass to him. It will be noticed that this clause of the act does not include policies of insurance payable to the wife, children, or other kin of the bankrupt, but is limited to policies the proceeds of which are payable to the bankrupt, his estate or personal representatives, and it was evidently the intent of the clause under consideration to declare that such policies should be deemed part of the assets of the estate. The purpose of the enactment is apparent. It is intended to prevent a debtor from investing in policies of this kind money which equitably belongs to his creditors, and reaping the benefit thereof, after he has secured protection against the enforcement of debts due from him through a discharge in bankruptcy. It was not the intent of congress in the enactment of this clause to deprive the family of a debtor of the protection which he may have secured to them in taking out policies for their benefit payable at his death, but it was intended to prevent debtors from availing themselves of the opportunity of making investments for their own benefit in the form of endowment policies, or policies payable to themselves, and holding the same, while seeking a discharge from their debts through the bankrupt act. It is the settled rule in construing statutes "that the intention of the lawmaker is to be deduced from a view of the whole statute, and every material part of it" (Kohlsaat v. Murphy, 96 U. S. 153); and it is also "a well-known rule for the construction of statutes, which, though ancient, is always adhered to, that general words in one clause of a statute may be restrained by the particular words in a subsequent clause of the same statute." City of Covington v. McNickle's Heirs, 18 B. Mon. 286. Section 6 of the bankrupt act is the declaration of the general pur-

pose of congress to secure to bankrupts the exemption provided for by the laws of the state in which they reside, but this general purpose is limited by the subsequent clause of section 70, which declares the rule to be applied with respect to a named and particular kind of property, to wit, policies of insurance having a surrender value payable to the bankrupt or his estate. The fact that this special clause is preceded by the word "provided" does not, in any proper sense, limit the force thereof. Thus, in Banking Co. v. Smith, 128 U. S. 174, 9 Sup. Ct. 47, it is said: "It is a common practice in legislative proceedings, on the consideration of bills for parties desirous of securing amendments to them, to precede their proposed amendments with the term 'Provided,' so as to declare that, notwithstanding existing provisions, the one thus expressed is to prevail; thus having no greater significance than would be attached to the word 'but' or 'and' in the same place, and simply serving to separate or distinguish the different paragraphs or sentences." Giving to the words used in section 70 their usual and fair import, they clearly declare that policies of insurance of the character of that in issue in this case pass to the trustee as part of the assets of the bankrupt, and, as these words deal with a specific matter, they must be construed to be a limitation upon the general declaration with respect to exemptions found in section 6, and I therefore hold that the endowment policy in question forms part of the assets of the estate of the bankrupt, and the title thereto will vest in the trustee, unless the bankrupt within 30 days exercises the right secured to him of paying or securing to the trustee the surrender value of the policy. It is therefore ordered that notice of the ruling of the court be forthwith given by the clerk to the referee and to the bankrupt for their guidance in the premises.