### PARKS et al. v. KNAPP. *

Circuit Court of Appeals, Eighth Circuit.
November 19, 1928.

No. 8136.

J. N. Johnson, of Canby, Minn. (C. A. Fosnes and John C. Haave, both of Montevideo, Minn., on the brief), for appellants.

Oluf Gjerset, of Montevideo, Minn., for appellee.

*Certiorari denied 49 S. Ct. 250, 73 L. Ed. —.

Before LEWIS, Circuit Judge, and PHILLIPS and SANBORN, District Judges.

LEWIS, Circuit Judge. Knapp brought this suit as receiver of the First National Bank of Montevideo, Minn., against Parks et al., and obtained a decree against Parks holding him to account to Knapp for certain of the bank's property then in the custody of Parks which he claimed the right to administer under a trust agreement.

The pleadings and proof show that the conditions which caused the trust agreement between Parks and the bank under which the property here in controversy was assigned and transferred to Parks, were these: On February 15, 1926, the bank as depository of the funds of the city of Montevideo bound itself by written instrument to keep, account for and pay over to the city all funds and money that it might deposit in the bank during one year thereafter. On June 1, 1926, it gave a like bond to the county of Chippewa, Minn., to keep and account for county funds deposited in the bank during the two succeeding years; and on December 16, 1926, the bank gave a like bond to Independent School District No. 1 of Chippewa County, to keep and account for funds of said district deposited in the bank during one year thereafter. Each of these bonds was signed by the bank as principal, and by some of the officers and directors of the bank and by others who had no official relation to the bank, as sureties. The Minnesota statutes require that such bonds be given before a bank can become depository of public funds. At the time of the adoption of the resolutions of December 14, hereafter noted, the School District held the bond of the bank as depository with the same sureties that appear on the bond given to it on December 16, and there is no evidence when the prior bond would have expired; but the resolution purported to be for the protection of sureties on future bonds as well as those on bonds then outstanding. Some of the sureties testified that they signed on the promise of the bank's officers that arrangements would be made to indemnify the sureties by setting aside for that purpose sufficient of the bank's assets, but no steps were taken to that end until December 14, 1926, when the board of directors passed a resolution as to each bond.

"That the President or Vice President and the Cashier be, and they are hereby authorized and directed, to properly assign, transfer and set over to A. M. Parks, as Trustee, so much of the assets of this bank and of the kind and character that they may

.select, to be held by said Trustee under an agreement in writing, to indemnify said sureties against any loss or injury by reason of such obligation, with full power and authority to replace and substitute all or any part of such collateral from time to time, as in their judgment will best protect and serve all parties at interest.

"Be it further resolved, that the action hereby taken shall apply to any and all bonds now in force, and to any new bonds hereafter executed for the same purpose by said sureties."

This arrangement was further evidenced by three written contracts between the bank and Parks as trustee, each bearing date December 14, 1926, and each referred to the bond and resolution, and each contract provided:

"Said trustee to retain said collateral and such substitution as may be delivered to him by the President or Vice President and Cashier of said Bank from time to time, and deliver over to said officers such part of collateral as they may demand upon suitable substitution therefor.

"If, at any future time, and while this agreement is in effect, the said bank should fail or refuse to pay any or all of such deposit or deposits upon proper demand, and the sureties be called upon to fulfill the terms of the bond or bonds covering such funds, the said Trustee is in such case authorized, empowered and directed to take any and all steps necessary to enforce the payment of so much of such collateral as may be necessary to reimburse said sureties for the amount that they may have been called upon to pay, together with all costs of collection and a reasonable charge for the services of said Trustee, and forthwith deliver to said Bank, or its legal representatives, the funds and collateral still remaining in his hands as such trustee.

"The said A. M. Parks by the execution thereof accepts the trust herein imposed."

Parks testified that under these resolutions and contracts the bank's officers delivered to him on December 29, 1926, $29,939.00 of the bank's notes on the city bond, in the forepart of January, 1927, they delivered to him $29,925.43 in notes on the School District bond, and on January 25 or 26, 1927, they delivered to him the remainder of the whole amount of notes received by him on the county bond, the whole amount delivered being $91,091.55. At the time of the trial he had collected and then held $13,411.01 principal and interest on these notes, and all of the unpaid notes, against which he claimed

the right to charge expenses and compensation for his services and to fully administer the trust.

The bank closed on January 29, 1927, and was taken over by the Comptroller. It was then insolvent and had been in that condition continuously throughout 1926, if not longer.

It further appears that on February 15, 1926, when the depository bond was given to the city, it had on deposit in the bank the sum of $27,153.84, and on January 29, 1927, when the bank closed, its deposit was $21,-853.40; that at the time the bank gave its depository bond to the county, on June 1, 1926, it had on deposit with the bank $25,-286.21, and on January 29, 1927, $12,269.58, and that, on December 29, 1926, when the School District approved the depository bond given to it, of date December 16, 1926, it had on deposit with the bank $11,517.22, and on January 29, 1927, $23,531.18. The record fails to show the fluctuations of these accounts between the respective dates mentioned, or the balances in favor of, or overdrafts, if any, against the depositors in the interims. After the bank closed the sureties on the bonds given to the School District and to the city settled with them for 60 per cent. of their deposits, leaving the district and the city to collect what they might of the remainder in the receivership proceedings, releasing the sureties therefor. A like settlement was made with the county by the sureties on the bond given to it for 75 per cent. of its deposit.

After decree, Parks and the sureties on the several bonds, who were also made defendants below, brought this appeal; and counsel for the receiver insists there should be an affirmance, because the transfers of the bank's assets to Parks in the manner and at the times stated were in violation of section 52 of the National Banking Act (13 Stat. 115), now section 91, Tit. 12, U. S. C. (12 USCA § 91). The pertinent parts of that section are these:

"All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, * * * made after the commission of an act of insolvency, or in contemplation thereof, [and] made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, * * * shall be utterly null and void." The purpose of the section is plain. When a transfer by an insolvent bank is a prohibited one, other sections of the statute subject all of the bank's property, including that

transferred, to the payment of its obligations, its creditors to share therein pro rata by way of dividends to be declared by the Comptroller. Title 12, §§ 193, 194, U. S. C. It seems clear to us that all of the notes were transferred to Parks in contemplation of insolvency and with a view to prevent the application of the bank's assets in the manner prescribed by statute—that is, they were within the literal terms of the statute and prohibited; but appellant's counsel contends that adjudications have construed the section otherwise. It is held in National Security Bank v. Butler, 129 U. S. 223, 9 S. Ct. 281, 32 L. Ed. 682, that if the bank makes the transfer with a view on its part to prevent the application of its assets in the manner prescribed by statute, or with a view to prefer the party to whom the transfer is made, the statute is violated, the act of transfer falls within the prohibition; although the party who received the transfer has no such view or intention and had no knowledge or suspicion at the time that the bank contemplated insolvency. On the subject of insolvency we quoted with approval in Brill v. McInnes (C. C. A.) 14 F.(2d) 306, this excerpt from the opinion of Judge Wheeler in the case of Roberts v. Hill (C. C.) 24 F. 571, 576, 577:

"The hopeless insolvency of the bank was within their [directors] contemplation, if they would contemplate it. That they did not, should not, it seems, take the case out of the statute. The insolvency of the bank was before them, and, with it before them, they gave this creditor a preference. This now appears to be within the statute."

We now quote also from the opinion of Circuit Judge Wallace in that case:

"A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations, and will be obliged to suspend its ordinary operations. It is not open to fair doubt but that the officers of the bank here contemplated failure as imminent. They doubtless hoped to defer the event indefinitely by concealing the real condition of affairs; but they took counsel of their hopes, and not of their judgment, when they contemplated any prolonged postponement."

The facts in this case leave no doubt in our minds that the officers and board of directors of the bank knew for many months prior to January 29, 1927, that it was insolvent and that on account of its insolvency its cessation to operate as a bank was imminent during all of that time.

Counsel for appellants insists that it is permissible, and has been so adjudicated, for a bank to transfer its assets to one of its depositors as an assurance to him that the deposit will be forthcoming on demand, or to a surety on its depository bond to one of its depositors to protect that surety against his contingent liability on the bond. That a transfer of that kind is an exercise of the bank's incidental powers necessary to carry out the express powers given it to receive deposits. He has called our attention to cases dealing with deposits in State banks that so hold. United States F. & G. Co. v. Village of Bassfield, 148 Miss. 109, 114 So. 26; Page Trust Co. v. Rose, 192 N. C. 673, 135 S. E. 795; McFerson v. National Surety Co., 72 Colo. 482, 212 P. 489; and Ainsworth v. Kruger, 80 Mont. 468, 260 P. 1057. Contra, Farmers' & Merchants' State Bank v. School District, 174 Minn. 286, 219 N. W. 163; Commercial B. & T. Co. v. Citizens' T. & G. Co., 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166; Divide County v. Baird, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296. These all turned on construction of State statutes conferring powers on such corporations or the general established rules applicable to such institutions. In none of them was the court concerned with prohibitions like those found in section 91, supra. The Minnesota Supreme Court in the case of Farmers' & Merchants' Bank, supra, held that State banks could not pledge their assets to depositors, unless expressly given that power. The transfers with which we are here concerned were not made to depositors. The three depositors were not parties to the transactions. So far as the record shows they did not request that the transfers be made or have knowledge that they were contemplated. Each of the depositors had already received the security that the State statute required they should take. They have never claimed any interest in the transferred notes nor asserted any rights to them. These transfers were made for the sole purpose of protecting the sureties in their contingent liability on the depository bonds, at their request, and they and their trustee are here asserting his right to apply the transferred notes to that purpose.

Armstrong v. Chemical National Bank (C. C.) 41 F. 234, 6 L. R. A. 226, deals with a transaction between two banks. A Cincinnati bank applied to its New York correspondent for a temporary loan. It transmitted with its request a large amount of its bills receivable to the New York bank to be held by the latter against any overdraft on it

by the former until false rumors as to the condition of the former should subside. The New York bank acceded in part to the request of the Cincinnati bank in taking up several of its drafts, and its right to reimburse itself for the advancements thus made out of the bills receivable was sustained. It turned out that the Cincinnati bank was insolvent on the day these bills were transmitted. It was held that the statute here under consideration had not been violated. Judge Wallace, who delivered the opinion in that case, said: "The statute is directed to a preference, not to the giving of security when a debt is created."

He treated the transaction as a loan, which is a different thing from a deposit. Farmers' & Merchants' State Bank v. School District, 174 Minn. 286, 219 N. W. 163; Nebraska v. First Nat. Bank (C. C.) 88 F. 947. The Fifth Circuit, in Stapylton v. Stockton (C. C. A.) 91 F. 362, relied upon and followed the ruling of Judge Wallace in the Armstrong Case under facts that may be said in legal effect to be the same. There the State treasurer of Florida had a deposit of $42,000 in the Merchants National Bank of Ocala. Its president notified the treasurer that the bank would have to have more money or suspend. They then had a conference with the president of another bank. The condition of the Ocala bank was gone into and on the representation of its president, Collins must have believed the Ocala bank would overcome its difficulties if he would loan it $15,000 additional, which he did by taking the bank's notes in the name of another bank secured by transfer of some of its property. It failed and the court held that Collins was entitled to hold the securities for his loan. The powers of a national bank are defined and limited by Act of Congress (U. S. C. tit. 12, § 24). It is not expressly given the power to borrow money, but it is held in the two cases last referred to, and in others, that its power to do so is implied when its necessities seem to require that that be done. Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738. We think the Armstrong Case and the Ocala bank case not controlling, and indeed have little bearing on our inquiry: whether the transfers to Parks under the conditions stated were in violation of section 91. There can be no doubt, if the notes transferred to Parks are applied to the purpose contended for by appellants, the bank's creditors will not share in their proceeds to the extent necessary to reimburse the sureties.

National banks are authorized to receive deposits. Their express power on that subject stops there. That is one of their principal functions and business. Morse on Banks and Banking (5th Ed.) vol. 1, § 48, says:

"The banking powers are those which are either fundamental parts of the business, or have become so linked with them as to be identified with the exercise of the banking franchises."

We are not advised that the transfer of a bank's assets to secure a depositor has become a general custom and thus so linked in practice with its express powers as to be recognized in the banking business as an incidental or implied power. We are inclined to believe with the Kentucky Court of Appeals and the Supreme Courts of Minnesota and North Dakota that such a practice is not in keeping with sound banking methods, can only result in unfair discrimination and preferential treatment of its depositors and ought not to be judicially approved. It enables those who are wary, usually because of large deposits, to gain advantage over the great number of small trustful depositors, and thus public confidence in banking institutions is shaken, to the public's detriment. But on the facts of this case we need not pass on that. Parks and his beneficiaries were not depositors. In the Kentucky case (153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166) the court held, where transfer of bank assets was made to a surety on a depository bond for public funds, that there was no implied power to thus pledge assets in further securing the deposit; and, commenting on a situation like this, where a State statute requires a depository bond for public funds, said:

" * * * But as the giving of personal security for the safety and return of such public deposits as are required by law to be secured would fully meet the ends of the law, and in no wise impair the value of the bank's assets as security for all of its depositors, it is apparent that this is the character of security contemplated. That this was the legislative intent is made the more apparent, when it is remembered that all of the assets of the bank stand pledged to secure all of its deposits, and it cannot be that the Legislature intended that this security for all of the depositors should be impaired in order that a few, or any number less than all, might be the better secured. In other words, the Legislature evidently did not intend that the security of any depositor should be impaired, in order that that of another might be increased. So the only reasonable construction that can be placed upon these statutes

requiring certain public funds to be secured by the depository is that the security that such depository shall give must be other than a pledge of its own assets."

The Supreme Court of Minnesota, where these transactions took place, and whose statutes provided for the giving of the depository bonds, has approved the ruling made by the Kentucky Court of Appeals. *Leonard Co-op. Creamery Ass'n v. First State Bank of Leonard*, 168 Minn. 28, 209 N. W. 631, 632. The transfers were therefore invalid under the law of the jurisdiction in which they were made, and in our opinion they were also void under said section 91, tit. 12, U. S. C. Being void it is the duty of Parks to account to Knapp for all of the bank's assets received by him under the trust agreement, without deduction for expenses or compensation, incurred after this suit was instituted.

The decree is affirmed.