### FIRST NAT. BANK OF ORTONVILLE, MINN., v. ANDRESEN.
### No. 9215.

Circuit Court of Appeals, Eighth Circuit.
Feb. 29, 1932.

L. M. Staples, of Minneapolis, Minn. (F. L. Cliff and E. V. Cliff, both of Ortonville, Minn., and Cobb, Hoke, Benson, Krause & Faegre, of Minneapolis, Minn., on the brief), for appellant.

Charles E. Chrisman, of Ortonville, Minn., for appellee.

Before KENYON, VAN VALKEN-BURGH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case appellee, as plaintiff below, brought action against the appellant to recover certain notes pledged by appellee as security for a certificate of deposit issued to appellant December 20, 1926, in the amount of $5,520.69. For convenience, the parties will be referred to as they appeared in the lower court.

Plaintiff is the receiver of the Citizens' National Bank of Ortonville, Minn., while defendant is a national banking association, which at all times pertinent to the issues here involved was located at Ortonville, Minn. On the 16th of December, 1926, the Citizens' National Bank of Ortonville, to take care of the clearings between the two banks of that day, issued to the defendant bank its draft on the Merchants' National Bank of St. Paul, Minn., for $5,518.13. On the 18th of December, 1926, this draft was protested for nonpayment, and was thereafter returned to the defendant bank. On the 20th of December, 1926, defendant presented this protested draft to the Citizens' National Bank of Ortonville, in lieu of which that bank executed its certificate of deposit for $5,520.69, being the amount of its protested draft, plus the protest fees. As security for this certificate the Citizens' National Bank then delivered to the defendant bank bills receivable of the bank consisting of various notes aggregating in amount $9,987. On the morning of December 23, 1926, the Citizens' National Bank, by vote of its board of directors, closed its doors, was taken charge of by the Comptroller of the Currency, and plaintiff was appointed its receiver. In due time, plaintiff, as such receiver, made demand on the defendant bank for the return of these notes, and, the defendant having refused to comply with the demand, the present action followed.

Plaintiff bases his right to recover these bills receivable on the ground that, at the time they were transferred to the defendant, the Citizens' National Bank was insolvent, that this transfer was in contemplation of insolvency, not in the usual course of business, and constituted an attempt to give a preference to the defendant bank, and was hence illegal and void.

On stipulation of the parties the action was tried to the court without a jury, and the court found all the issues in favor of the plaintiff and against the defendant. From the judgment entered defendant has appealed, contending that the court's findings are not sustained by the evidence. The action having been tried to the court without a jury, on stipulation of the parties, the findings of the court have the same effect as the verdict of a jury, and, if sustained by substantial evidence, must be affirmed by this court. Lambert Lumber Co. v. Jones Engineering & Construction Co. (C. C. A.) 47 F.(2d) 74.

Section 91, title 12, USCA (Rev. St. § 5242), provides as follows: "All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another,

except in payment of its circulating notes, shall be utterly null and void," etc.

At the time of the transaction here involved, the Citizens' National Bank had borrowed all the money it was permitted by law to borrow. The lower court so found, and this finding is amply sustained by the evidence. The capital of the bank was seriously impaired. It had been indulging in the practice of "kiting" drafts to a considerable extent, and two previous drafts, one on November 23, 1926, for $4,749.76, and one on December 13, 1926, for $10,821.95, besides the draft issued December 16, 1926, for $5,518.13, had gone to protest.

■ In support of the transfer it is contended by appellant that the transaction resulting in the issuance of the certificate of deposit was a loan negotiated in the ordinary course of business. At the time of the issuance of the certificate of deposit, however, the defendant bank loaned the Citizens' National Bank no funds whatever, but the Citizens' National Bank was indebted to the defendant bank on account of the protested draft, and the certificate of deposit was issued in settlement of that indebtedness. The certificate of deposit, therefore, did not represent a loan in the ordinary sense of the term, nor was the transaction a usual or ordinary one. Mr. Mitchell, manager of the defendant bank, called as a witness on its behalf, interrogated with reference to this transaction, testified that his bank had never made any other loans on certificates of deposit. The transaction was therefore not in the usual or ordinary course of the banking business.

While the obligation of the bank, on the issuance of this certificate of deposit, may not have differed from its obligation had it issued its promissory note, yet, on the books of the bank at least, the issuance of this certificate of deposit indicated that money had been deposited with the bank, and not that the bank had been borrowing money. The transaction may have taken this form for two reasons: First, because the Citizens' National Bank had already borrowed all the money it was permitted by law to borrow, and, second, because large deposits would reflect a healthy condition, while large borrowings would reflect financial embarrassment. The plaintiff bank could not take care of these clearances in the usual way, because, at the time, it did not have on deposit with its correspondent banks a sufficient amount of money to take care of the liability. It apparently did not wish to increase its borrowings from other banks, and, hence, resorted to the subterfuge of issuing a certificate of deposit.

■ We need not pause to consider whether the defendant bank had knowledge of the condition of the Citizens' National Bank because it is not necessary that that bank should have had knowledge of the other bank's condition, or whether it contemplated insolvency. National Security Bank v. Butler, 129 U. S. 223, 9 S. Ct. 281, 32 L. Ed. 682.

■■ The lower court found, and we think its finding sustained by ample evidence, that the officers of the Citizens' Bank made the transfer here in question in contemplation of insolvency. A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that it will presently be unable to meet its obligations. Parks v. Knapp (C. C. A.) 29 F.(2d) 547, 549; Federal Intermediate Credit Bank v. L'Herisson (C. C. A.) 33 F.(2d) 841; Federal Reserve Bank v. Omaha National Bank (C. C. A.) 45 F.(2d) 511; Brill v. McInnes (C. C. A.) 14 F.(2d) 306; Roberts v. Hill (C. C.) 24 F. 571. In Parks v. Knapp, supra, this court, quoting with approval from Roberts v. Hill, supra, said: "'A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations, and will be obliged to suspend its ordinary operations. It is not open to fair doubt but that the officers of the bank here contemplated failure as imminent. They doubtless hoped to defer the event indefinitely by concealing the real condition of affairs; but they took counsel of their hopes, and not of their judgment, when they contemplated any prolonged postponement.'"

In the instant case, the officers of the Citizens' National Bank could not reasonably have contemplated the bank's financial condition without realizing its failure as imminent. Its drafts were going to protest; it was "kiting" drafts for the purpose of postponing the liquidation of its liabilities; its capital was largely depleted; it was carrying in its assets a large amount of bills receivable which its officers knew were uncollectible; and the directors voted to close its doors two days later. There is nothing in the record to indicate that, between the time of the transfer in question and the closing of the bank, it suffered any substantial loss. The conclusion is irresistible that the transfer was made in contemplation of insolvency.

■ When a transfer is made to a creditor by a bank whose officers know of its insolvency,

an intent to give a preference is presumed. Federal Reserve Bank v. Omaha National Bank, supra. Every person is, of course, presumed to intend the natural and probable consequence of his own acts. The object of the quoted statute is to secure equal distribution and prevent conduct which the officers of the insolvent bank can perceive, in the exercise of reasonable foresight, will prevent the fulfillment of that object.

It appears from the record that the assets available, even after the collection of 100 per cent. assessment against the stockholders, will be insufficient to pay the creditors in full, and to permit this preference to stand would be violative of the purpose of the statute.

The judgment appealed from is therefore affirmed.