LOUGHMAN v. TOWN OF PELHAM, WESTCHESTER COUNTY, N. Y. (EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited, Third Party Defendant).

District Court, S. D. New York.

Oct. 22, 1941.

Hardy, Stancliffe & Hardy, of New York City (William F. McDermott and George T. Barker, both of New York City, of counsel), for plaintiff.

Whitman, Ransom, Coulson & Goetz, of New York City (William L. Ransom and Henry S. Reeder, both of New York City, of counsel), for Town of Pelham, defendant and third party plaintiff.

Chauncey L. Grant, of New York City (Edward B. Bentley and Sperry Butler, both of New York City, of counsel), for third party defendant.

WOOLSEY, District Judge.

My judgment in this cause is:

1. That the original complaint herein be, and it hereby is, dismissed without costs; and, consequently,

2. That the third party complaint be, and it hereby is also, dismissed without costs.

I. In its essence, this is an action to recover for money voluntarily paid out under mistake of law by an officer of the United States, and so is recoverable under

appropriate circumstances. Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83, and cases there cited.

## Findings of Fact

II. I find the facts which are stipulated for the purposes of this action, are as follows:

1. On March 1, 1933, the Pelham National Bank was a national banking institution, organized under the laws of the United States, having its principal office and place of business in the Town of Pelham, Westchester County, New York.

2. On March 4, 1933, the Pelham National Bank was closed by Proclamation of the Governor of the State of New York, and on March 6, 1933, the President of the United States, by Proclamation, closed all the national banks in the United States and prohibited them from reopening without a license of or from the Secretary of the Treasury.

3. On March 13, 1933, the Pelham National Bank applied for a license to reopen, but such license was not granted. Thereafter, and on March 21, 1933, a Conservator was appointed for the Pelham National Bank pursuant to Section 203 of Title 12, Banks and Banking, of the United States Code Annotated.

4. On or about July 21, 1933, it was determined by the Comptroller of the Currency of the United States that the Pelham National Bank was insolvent, and on that day the said Comptroller duly appointed Warner Pyne Receiver for said Bank pursuant to Section 192 of Title 12, Banks and Banking, of the United States Code Annotated.

5. Warner Pyne duly qualified as Receiver for the Pelham National Bank and acted as such until the appointment of Edward D. Loughman, the plaintiff herein, as Successor Receiver. The appointment of Edward D. Loughman as Successor Receiver took effect on September 30, 1935, and the said Edward D. Loughman duly qualified and has ever since acted and still is acting as Receiver for the Pelham National Bank.

6. The Town of Pelham, defendant and third party plaintiff, is a municipal corporation organized and existing under the laws of the State of New York.

7. On or about November 3, 1931, Joseph H. McCormick was duly elected Supervisor of the Town of Pelham for a term of two years from January, 1932, and he acted as such Supervisor until his death on April 6, 1933.

8. On or about April 13, 1933, William M. McBride was appointed and took office as Supervisor of the Town of Pelham for a term ending December 31, 1933, and thereafter William M. McBride was elected Supervisor of The Town of Pelham for a term of two years from January 1, 1934.

9. On or about December 15, 1931, the Town Board of the Town of Pelham duly adopted a resolution reading as follows: "Resolved that The Pelham National Bank of Pelham and the First National Bank of Mount Vernon are designated as depositaries for all funds received and collected by the Supervisor of the Town of Pelham.".

10. On January 19, 1932, the Town Board of the Town of Pelham duly adopted a resolution reading as follows:

"Motion made by the Chairman, seconded by Justice Roberson and carried that the following banks be designated as depositaries for funds of the Town of Pelham,

"Pelham National Bank of Pelham

"First National Bank of Mount Vernon

"Mount Vernon Trust Company of Mount Vernon."

11. An agreement dated December 28, 1931, was entered into between Joseph H. McCormick as Supervisor of the Town of Pelham, as party of the first part, the Pelham National Bank, the party of the second part, and the Mount Vernon Trust Company, as Escrow Bank, party of the third part. This agreement reads as follows:

"This Agreement made the 28th day of December, 1931, between Joseph H. McCormick, Supervisor of the Town of Pelham, Westchester County, New York, Party of the first part; Pelham National Bank, a National banking corporation created under the laws of the United States, having its principal place for the transaction of business at Pelham, New York, party of the second part; and the Mount Vernon Trust Company (Escrow Bank) a corporation organized under the laws of the State of New York, with office in the County of Westchester, City of Mount Vernon, party of the third part.

"Whereas the party of the first part as a condition of making said deposits and for the purpose of indemnifying itself against loss, has requested the party of the second part to deposit with the party of the third part, certain securities under the conditions after set forth, which terms are agreeable to all of the parties hereto:

"1. That the party of the first part will deposit from time to time with the party of the second part, certain sums of money, which money is to remain on deposit with the party of the second part, subject to draft.

"2. That the party of the second part hereby agrees to immediately deposit with the party of the third part the following securities in negotiable form: (List of securities in escrow) $25,000 Westchester County, 4-¼% Bonds, due 1968.

"Substitution of securities of equal value for any or all of the above may be effected by the party of the second part, upon consent of the party of the first part, which shall be given upon receipt of advice of the security to be substituted and the name of the series, and a signed copy of such consent shall be delivered to the party of the third part, as a condition precedent to any such substitution. The party of the first part grants to the party of the second part the right to remove, when due, the incoming coupons from aforesaid securities, or substitutions therefor.

"In the event that the party of the second part shall fail to honor any draft of the party of the first part, or shall suspend business for more than two (2) consecutive business days, the party of the third part shall immediately upon advice by the party of the first part of such dishonor, or suspension, deliver to the party of the first part, the securities deposited as aforesaid, and the said first party shall have the right to immediately sell said securities at the prevailing market price and out of the proceeds arising therefrom, satisfy any indebtedness that may exist from the said Pelham National Bank to Joseph H. McCormick, Supervisor of the Town of Pelham, by reason of the deposits of said money as aforesaid, rendering any overplus to said bank.

"Upon the receipt, by the party of the third part of a written statement signed by the parties of the first and second part, that the sum deposited has been withdrawn and authorizing the release of all the said securities, and upon being paid its expenses and compensation as herein provided, the party of the third part shall deliver to the party of the second part, or upon its order all securities deposited hereunder and then in the possession of the party of the third part and shall be discharged of all liability and responsibility hereunder.

"The Mount Vernon Trust Company (escrow bank) the depositary herein, shall not be responsible for any of the recitals in the agreement herein above mentioned and shall be entitled to reasonable compensation for all services and its reasonable expenses, counsel fees, and disbursements incurred in connection with the discharge of its duties as depository, and shall not be liable for any of the acts of the parties to this agreement, except its own.

"In witness whereof the parties hereto have caused these presents to be signed by their respective Presidents or Vice-Presidents and their corporate seals, this 28th day of December, 1931."

12. Between January 1, 1932, and March 3, 1933, Joseph H. McCormick, as Supervisor of the Town of Pelham, made deposits in and withdrawals from accounts opened in the Pelham National Bank for the Town of Pelham in the name of and subject to draft of Joseph H. McCormick as Supervisor of the Town of Pelham. On March 3, 1933, the Town of Pelham had on deposit in said accounts with the Pelham National Bank in the name of Joseph H. McCormick as Supervisor, as aforesaid, the sum of $27,862.92, divided as follows:

(a) Ordinary checking account $21,075.73
(b) Thrift account 6,787.19

13. Following the death of Joseph H. McCormick, William M. McBride, as Supervisor of the Town of Pelham, made a demand upon Warner Pyne as Receiver of the Pelham National Bank to release the $25,000 aggregate principal amount of Westchester County 4¼% Bonds due 1968, held in escrow by the Mount Vernon Trust Company, pursuant to the aforesaid agreement.

14. On or about September 27, 1933, Warner Pyne, as Receiver of the Pelham National Bank, addressed to Solon J. Liebeskind, Town Attorney for the Town of Pelham, a communication reading as follows:

"September 27, 1933

"Solon J. Liebeskind, Esq.,
   "Attorney for Village of North Pelham,
   "Town Hall,
   "North Pelham, New York

"Dear Sir:

"In August we discussed the proposition of the Town of Pelham obtaining delivery from the Mount Vernon Trust Company of $25,000, par value Westchester County, New York, 4¼% Bonds, deposited there in escrow under an agreement with former Supervisor, Joseph H. McCormick, deceased, to secure deposits made by Mr. McCormick of Town funds in the Pelham National Bank.

"The Comptroller of the Currency has called my attention to Section 5242 United States Revised Statutes, 12 U.S.C. § 91 [12 U.S.C.A. § 91] prohibiting transfers or assignments after an act of insolvency or in contemplation thereof, and declaring such an assignment null and void; and I am directed by the Comptroller to advise him with respect to the legality and validity of the pledge agreement above mentioned and the market value of Westchester County bonds deposited thereunder.

"I have already spoken to you about this matter and I have also suggested to Mr. Kelleher, the Secretary to the present Supervisor, that he procure and furnish me with a certified copy of any and all resolutions or minutes of proceedings of the Town Board concerning the agreement in question made by Mr. McCormick and/or the deposit of funds with this bank made during Mr. McCormick's regime. I shall be glad if you will advise me at the earliest possible moment the Supervisor's and the Town's version of the facts and their contentions with respect to the foregoing matter, particularly as to what proof or evidence there might be as to the circumstances surrounding the execution of the escrow agreement mentioned, the deposit of funds by Mr. McCormick, what, if any, the New York State statutes or the local laws or rulings or resolutions of the local municipal authorities might concern or affect the matter.

"As soon as I receive this advice from you I will immediately make my report to the Comptroller; and in view of Supervisor McBride's advice to me that the matter is now urgent because of a payment which must be made by the Town by October 15th, I will request the Comptroller to give me telegraphic instructions concerning the matter at the time I make my further report to him.

   "Yours very truly,
"WP/EW          Warner Pyne
                         "Receiver

"Mr. Cornelius Kelleher,
   "Secretary to Supervisor McBride,
   "Town Hall,
   "North Pelham, N. Y."

15. On or about September 30, 1933, Solon J. Liebeskind, Town Attorney for the Town of Pelham, addressed to Warner Pyne, as Receiver of The Pelham National Bank, a communication reading as follows:

              "Solon J. Liebeskind
              "Attorney at Law
           "One Madison Avenue
              "New York City
                      "September 30, 1933

"Warner Pyne, Esq., Receiver
   "Pelham National Bank
   "Pelham, New York

"Re Escrow Agreement with former Supervisor, Joseph H. McCormick, Deceased, to secure deposits made by the said Supervisor of town funds in the Pelham National Bank.

"Dear Mr. Pyne:

"Answering your favor of the 27th inst., permit me, at the outset to emphatically call your attention to the fact that the matter was first taken up and brought to your attention last August and that, at that time, I endeavored to impress upon you the fact that it is most important that the Town get prompt action, as it needs the proceeds of the security to meet the Town obligations to the County, for taxes which must be paid not later than October 10th; here it is September 30th, and no definite action has resulted. Realizing the necessity for prompt action, won't you please exert your best efforts so as to enable the Town to meet its obligations by the 10th of next month.

"1. I desire to call your attention to the fact that under Section 101 of the old Town Law, and as amended by Section 29, Subdivision 6 of the new Town Law, it substantially provides, among the powers and duties of the Supervisor, as follows: '* * * shall purchase at the expense of the town a surety bond of a surety company, authorized to do business in the state of New York, securing to the town the safety of town funds deposited by him

in or with any bank or trust company in this state, and indemnifying the town against the loss thereof, or, whenever authorized and directed by the town board, said supervisor may accept from any bank or trust company in this state in which town funds are on deposit, the bonds or certificates of the United States, of the state of New York or of any county, town, city, village or school district of the state of New York, as security for the funds of the town so deposited but such bonds or certificates shall be subject to the approval of the town board and shall be deposited in such place and held under such conditions as the town board may determine.'

"2. Pursuant to such authority, the former Supervisor entered into the escrow agreement in question, under which 25,000, par value, Westchester County, 4¼ Bonds were deposited with the Mount Vernon Trust Company, before any deposit was made with the Pelham National Bank, and these deposits of public funds were so made only after the agreement had been entered into (December 28th, 1931) and the security obtained as a condition precedent to the making of such deposit.

"3. The designation of the Pelham National Bank as one of the depositories for town funds was duly reported to the Town Board after the agreement was obtained by the Supervisor, and the security deposited by the Bank, and is so recorded in the Minutes of the Town Board, held on January 19th, 1932.

"4. Security for the deposit of public funds being demanded by Statute and by general practice of long standing, it seems to me that equitable principles would not apply against such deposits of security, but rather, in favor of them. Under the circumstances, there could not be any claim whatsoever that there was any taint of any sort connected with either the deposits or pledges.

"5. Insolvency or contemplation thereof does not appear to have been in the offing in any stage preliminary to its actual coming into existence. That being so, I cannot see how the liquidator or the receiver—as the case may be—is in any better position to deny the security or to claim the agreement made between the Bank and the depository of the security, is invalid, than the Pelham National Bank was at any time before its liquidation be-

came necessary. In Parks v. Knapp ([8 Cir.], 29 F.2d 547) the pledges were made in contemplation of insolvency.

"6. It seems to me that the Bank had complete power in the conduct of its business, to pledge securities and to secure the deposit of public moneys. In the above cited case ([Smith v. Baltimore & O. R. Co., D.C.], 48 F.2d 861, 867) a case of the securing of private deposits, the Court said:

"'There seems to have always been in the United States, and in some states, a marked distinction made between the security which a bank may give for a public deposit as distinguished from private deposits. The Comptroller seems to have consistently held that national banks may pledge [their] assets as securities for public deposits (see Report 1657, House of Representatives, 71st Congress, 2d Session, to accompany Senate Bill 486), while he has always taken the position that national banks do not possess this power as to private deposits, and this, tho' the power was but an implied one.'

"7. The liquidator, it is true, has a duty to protect the depositors, but I do not believe his position can be made stronger thereby to repudiate an agreement which, I believe, the bank had not only power to make, but was undoubtedly happy to make, in the belief that the Bank and, of course, all connected with it as stockholders and depositors, would be the gainers.

"8 I further desire to call your attention to the fact that under the statutory provision quoted above (Section 101 of the old Town Law), it provides for the Supervisor to obtain a surety bond of a solvent Surety Company, to secure the safety of town funds deposited by him. It is not too far a cry here to imply that taking securities duly given him by proper action of the authorized officers of a Bank, is therein authorized. Admittedly, that is a question, as 'Surety Bond' is the language. I am firmly convinced that it would seem to be a matter of public policy growing up out of a general practice and undisputable by the Courts, as yet, for a bank to pledge its securities for the deposits of public funds.

"For the reasons above stated, it is within the legal power of the Bank to make such an agreement, and the liquidator or receiver may not repudiate it.

"Trusting that the above may be of assistance to you in properly and expeditiously disposing of the matter, I am

"Very truly yours,

"S. Jay Liebeskind

"SJL.FC        Attorney for the Town of Pelham, N. Y."

16. On or about October 11, 1933, Warner Pyne, as Receiver of The Pelham National Bank, addressed to the Mount Vernon Trust Company a communication reading as follows:

"October 11th, 1933

"Mount Vernon Trust Company,
"Mount Vernon, N. Y.

"Gentlemen:

"I beg to advise you that I was appointed receiver of the Pelham National Bank by the Comptroller of the Currency of the Treasury Department on July 21st, 1933, and that the Comptroller in ordering my appointment stated officially that he found the Pelham National Bank to be insolvent.

"I further beg to advise you that this bank was closed and discontinued business on the morning of March 4th, 1933. Pursuant to the proclamation of the Governor of the State of New York and pursuant to the Presidential proclamation of March 6th, 1933, the bank has remained closed. As receiver I am now liquidating the bank.

"The foregoing advice is sent you in connection with an agreement between the Pelham National Bank; Joseph H. McCormick, supervisor of the town of Pelham; and the Mount Vernon Trust Company, bearing date of December 28th, 1931, pursuant to which $25,000 par value Westchester County Bonds were deposited with you in escrow.

"You are advised that the records show a balance in the account of the Town of Pelham, Joseph McCormick (Supervisor) in the amount of $18,204.23. There were in addition checks drawn on this account and included in the unremitted cash letter of the Federal Reserve Bank on March 3rd, as follows:

"This sum together with the above deposit makes a total of $21,075.73.

"In connection with the sale of the bonds you are advised that I have been instructed by the Comptroller of the Currency as follows: 'You should interpose no objection to the sale of the pledged bonds by the Supervisor at the market price on the date of the sale, with the understanding that the amount received from the sale will be considered as a reduction on the deposit account.

"Yours very truly,

"W. P.

"WP/L        Receiver

"P. S. I understand that you today by telephone suggested that I as receiver execute some sort of a 'release'. This I am not authorized to do. I reported to the Comptroller of the Currency that in so far as it was possible for me to ascertain the facts, apparently the bonds in question were pledged by the Pelham National Bank in December, 1931, at the time of the date of the trust agreement to which you were a party, and that in so far as my investigation could disclose there was no present indication or proof that this pledge or the deposit of the bonds with you was in any sense a violation of Section 5242, U.S.R.S. I do not believe it to be such. At the same time, however, all I can do is to state the facts to you and the Comptroller as outlined in this letter, but I cannot undertake to execute any document which would constitute waiver or release of any rights of the receivership trust should any facts hereafter develop or come to my attention which would indicate that my present information as per my report to the Comptroller is incorrect. While I do not of course anticipate any future difficulty or trouble on this score and while I believe the facts to be as outlined, I cannot undertake to make any guarantee or execute or deliver any release.

"W. P."

17. On or about October 11, 1933, William M. McBride, as Supervisor of the Town of Pelham, drew a check on the

| Maker | Endorser | Amount |
| --- | --- | --- |
| Town of Pelham | Peoples Savings Bank | $2,546.50 |
| Town of Pelham | J. C. Townsend | 150.00 |
| Town of Pelham | James Male | 150.00 |
| Town of Pelham | Robert C. Buttolph | 25.00 |
| | | $2,871.50 |

Pelham National Bank in the amount of $27,862.92, being the aggregate amount of the deposits of the Town of Pelham in the Pelham National Bank. Said check was presented for payment and protested for nonpayment, with the statement endorsed by the then Receiver of the Pelham National Bank that said Bank was insolvent, was being liquidated and did not and would not have sufficient assets to pay its obligations in full.

18. William M. McBride presented the said check, protested as aforesaid, to the Mount Vernon Trust Company and thereafter and on or about October 23, 1933, the Mount Vernon Trust Company turned over to William M. McBride, as Supervisor of the Town of Pelham, pursuant to the terms of the aforesaid escrow agreement, $25,000 aggregate principal amount of Westchester County 4¼% Bonds due 1968, bearing the numbers 12261—12285.

19. The $25,000 aggregate principal amount of Westchester County 4¼% Bonds due 1968, were registered in the name of the Pelham National Bank. On or about October 11, 1933 William M. McBride, as Supervisor of the Town of Pelham, made a demand upon Warner Pyne, as Receiver of the Pelham National Bank, to execute a general bond power or other power which would permit such bonds to be negotiated and sold. Warner Pyne, as Receiver of the Pelham National Bank, refused to comply with such demand.

20. Upon the refusal of Warner Pyne, as Receiver of the Pelham National Bank, to execute a general bond power or other power permitting the $25,000 aggregate principal amount of Westchester County 4¼% Bonds due 1968, to be negotiated, William M. McBride, as Supervisor of the Town of Pelham, filed a petition in the United States District Court for the Southern District of New York, for an order directing Warner Pyne, as Receiver of the Pelham National Bank, to execute a general bond power or other power permitting the transfer of the $25,000 aggregate principal amount of Westchester County 4¼% Bonds due 1968, to the said William M. McBride as Supervisor of the Town of Pelham. As a result of this proceeding an order was duly made by the Honorable Robert P. Patterson, the relevant parts whereof read as follows:

"The Petitioner above named, having duly made a motion upon a Petition and Order to Show Cause, returnable in the above mentioned Court for the above named Order, returnable November 3, 1933,

"Now, upon reading and filing the Order to Show Cause made by United States District Judge, Robert P. Patterson, on October 30, 1933, the Petition of William M. McBride as Supervisor of the Town of Pelham, New York, verified October 27, 1933, and the exhibits attached thereto; and after hearing Solon J. Liebeskind, attorney for the Petitioner in support of said motion, and Hardy, Stancliffe & Hardy, attorneys for Warner Pyne, as Receiver of The Pelham National Bank, of Pelham, New York, appearing but not opposing the motion, it is hereby

"Ordered that Warner Pyne, as Receiver of The Pelham National Bank, be and he hereby is directed to execute and deliver to William M. McBride as Supervisor of the Town of Pelham, a General Bond Power, in the form, or substantially in the form of Exhibit "F" annexed to the aforesaid Petition, to William M. McBride as Supervisor of the Town of Pelham, enabling the said Petitioner, William M. McBride as Supervisor of the Town of Pelham, to negotiate the sale of Twenty-five $1,000.00 Westchester County 4¼% Bonds, numbered 12261 to 12285, both inclusive, due 1968, heretofore deposited by The Pelham National Bank with the Mount Vernon Trust Company under and pursuant to the agreement dated December 28, 1931, attached to the Petition as Exhibit "A", and the said William M. McBride as Supervisor of the Town of Pelham, shall apply the proceeds of said sale in accordance with the provisions of said agreement, provided, however, that the execution and delivery by Warner Pyne, as Receiver of The Pelham National Bank, of the aforesaid General Bond Power, shall not be deemed to be and shall not be in any manner a waiver of any of the rights of said Receiver in and to said Bonds and in and to the proceeds thereof, or any part thereof, or of his right to recover said Bonds, or the proceeds thereof, or any part thereof, and if it shall later appear that the said William M. McBride as Supervisor of the Town of Pelham is not and was not entitled to said Bonds or to sell said Bonds, and is not and was not entitled to the

proceeds thereof, or any part thereof, then and in that event, the said William M. McBride as Supervisor of the Town of Pelham and/or the Town of Pelham, upon demand therefor by Warner Pyne, as Receiver of The Pelham National Bank, and/or his successor or successors, shall forthwith pay or turn over to the said Warner Pyne, as Receiver of The Pelham National Bank, and/or his successor or successors, the proceeds of the sale of said bonds with interest thereon from the date of sale thereof.

"Robert P. Patterson
"U. S. D. J."

The proceeding instituted by William M. McBride in the United States District Court for the Southern District of New York was entitled: "In the Matter of the Petition of William M. McBride as Supervisor of the Town of Pelham, New York, for an order directing Warner Pyne, as Receiver of The Pelham National Bank of Pelham, New York, to execute a Power or other assignment, permitting the transfer of Twenty-five $1,000.00 Bonds of the County of Westchester, State of New York, to the said William M. McBride, as Supervisor of the Town of Pelham.", and had the Index No. 16—375. The parties hereto expressly stipulate that the record of this proceeding, as well as any and all documents filed therein, may be referred to by the parties hereto in the same manner and with the same force and effect as if such documents were hereto annexed and made a part of this stipulation.

21. Pursuant to the order entered by Honorable Robert P. Patterson in the proceeding above referred to, Warner Pyne, as Receiver of the Pelham National Bank, executed and delivered on November 16, 1933, to William M. McBride, as Supervisor of the Town of Pelham, a general bond power, reading as follows:

"Know All Men by These Presents:

"That I, Warner Pyne, as Receiver of The Pelham National Bank, pursuant to the order of Hon. Robert P. Patterson, United States District Judge, dated November 10, 1933, have assigned and transferred and by these presents do assign and transfer unto William M. McBride, as Supervisor of the Town of Pelham, New York, Twenty-five one thousand dollars ($1,000) Westchester County 4¼% Bonds, numbered 12261 to 12288 (both inclusive), due 1968, standing in the name of The

Pelham National Bank on the books of said County of Westchester, and I do hereby constitute and appoint ——— my true and lawful attorney, irrevocably, for me and in my name and stead but to my use, to sell, assign, transfer and make over, all or any part of the said bonds and for that purpose to make and execute all necessary acts of assignment and transfer thereof, and to substitute one or more persons with like power, hereby ratifying and confirming all that said Attorney or his substitute or substitutes shall lawfully do by virtue hereof.

"In witness whereof, I have hereunto set my hand and seal at Pelham, New York, the 16th day of November, 1933.

"Warner Pyne (L. S.)
"As Receiver of the Pelham National Bank

"Signed, sealed and delivered
in the presence of:
"Willard N. Young
"State of New York
"County of Westchester ss:

"On this 16th day of November, 1933, before me personally came Warner Pyne, Receiver of The Pelham National Bank, to me known, and known to me to be the individual described in and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

"(Notarial Seal) Willard N. Young
"Notary Public, Westchester County
"Commission expires March 30, 1934"

22. On November 20, 1933, the $25,000 aggregate principal amount of Westchester County 4¼% Bonds due 1968, delivered to William M. McBride, as aforesaid, were transferred from the name of the Pelham National Bank and registered in the name of William M. McBride, Supervisor of the Town of Pelham.

23. On or about May 3, 1934, William M. McBride, as Supervisor of the Town of Pelham, sold or caused to be sold at the then prevailing market price of 96½, the $25,000 aggregate principal amount of Westchester County 4¼% Bonds, due 1968, which had been deposited under the escrow agreement, see Finding 13 above, and delivered to the said William M. McBride, as aforesaid, and realized from such sale, including interest to the date of sale, the total sum of $25,112.99, which said amount was applied to reduce the total indebtedness of the Pelham Na-

tional Bank to the Town of Pelham on account of its deposits aggregating $27,-862.92 in The Pelham National Bank.

24. On April 12, 1934, William M. McBride, as Supervisor of the Town of Pelham, filed with Warner Pyne, as Receiver of the Pelham National Bank, proofs of claim in the amounts of $21,-075.73 and $6,787.19, respectively. Thereafter, Warner Pyne, as Receiver of the Pelham National Bank, paid to the Town of Pelham two dividends totalling $2,-749.93 as follows:

| | |
|---|---|
| October 2, 1934 | $2,318.33 |
| January 28, 1935 | 431.60 |

The payment of such dividends, together with the sum of $25,112.99, being the proceeds received from the sale of the Bonds as aforesaid, constituted payment in full of the total indebtedness of the Pelham National Bank to the Town of Pelham aggregating $27,862.92.

25. The general creditors of the Pelham National Bank received dividends as follows:

| | |
|---|---|
| October 2, 1934 | 16% |
| February 28, 1935 | 10% |
| February 8, 1939 | 10% |

and if the Town of Pelham had been treated as a general creditor it would have received as dividends on account of its total deposits in the Pelham National Bank on October 14, 1941, the sum of $10,030.65.

26. On September 16, 1939, Edward D. Loughman, as Receiver of the Pelham National Bank, addressed a communication to Harold W. Davis, as Supervisor of the Town of Pelham, reading as follows:

"September 16, 1939
"Mr. Harold W. Davis,
"Supervisor of the Town of Pelham
"Pelham, New York

"Registered Mail. Return Receipt
Requested
"Dear Sir:

"I am the present Receiver of The Pelham National Bank of Pelham, New York, having duly succeeded Warner Pyne who was originally appointed such Receiver.

"Under date of November 10, 1933, the Honorable Robert P. Patterson, District Judge of the United States District Court for the Southern District of New York, in a proceeding entitled: 'In the Matter of the Petition of William M. McBride, as Supervisor of the Town of Pelham, New York, for an Order directing Warner Pyne, as Receiver of the Pelham National Bank of Pelham, New York, to execute a Power or other assignment, permitting the transfer of Twenty-five $1,000.00 Bonds of the County of Westchester, State of New York, to the said William M. McBride as Supervisor of the Town of Pelham,' bearing Index No. 16-375, made an order authorizing my predecessor to execute and deliver to William M. McBride, as Supervisor of the Town of Pelham, a general bond power in order to negotiate the sale of Twenty-five $1,000.00 Westchester County 4¼% Bonds numbered 12261 to 12285, both inclusive, due 1968, which bonds were deposited by The Pelham National Bank of Pelham, New York, with the Mount Vernon Trust Company, pursuant to an agreement dated December 28, 1931.

"It has now come to my attention that the agreement dated December 28, 1931, entered into between the Pelham National Bank of Pelham, New York, and Joseph H. McCormick, as Supervisor of the Town of Pelham, Westchester County, New York, was ultra vires insofar as the power of the bank to make said agreement was concerned and the demand is hereby made upon you to deliver the proceeds of said bonds to me with interest thereon, less the amount of any dividends you are entitled to receive as a general creditor of the said bank.

"For your information, as a general creditor, you are entitled to dividends amounting to $10,030.65. I understand that there has been paid to you a total of $27,862.92, which sum includes the proceeds of the sale of said bonds together with adjusted interest and certain dividend checks which were paid to you by the Comptroller of the United States.

"This will serve as a demand upon you, in accordance with the order of Judge Patterson above mentioned, to return to me the difference between the sum of $27,-862.92 and the sum of $10,030.65.

"Very truly yours,
"Edward D. Loughman,
"edl/ham                              Receiver"

27. The Town of Pelham failed to comply with the demand contained in the letter of September 16, 1939, and thereafter and on April 4, 1940, the complaint in this action was served upon the defendant the Town of Pelham.

28. No written verified claim has been filed by or on behalf of the plaintiff in this action, or his predecessor in office, with the Town Clerk of the Town of Pelham for the amount for which recovery is sought herein or for any other amount, and no itemized voucher therefor has been presented to the Town Board or Town Comptroller of the Town of Pelham and no such claim or voucher has been audited or allowed.

### Comment

III. The only two questions argued with any seriousness are (1) ultra vires, and (2) the statute of limitations.

IV. As is usual in causes, there is some underbrush to be cleared away before the merits herein are reached.

V. The relevant parts of Judge Patterson's order of November 10, 1933, granted on the Town of Pelham's petition, without opposition of the then receiver, are herein above set forth.

In my opinion this order, pending demand by the receiver of the Bank for the return of the securities or the proceeds thereof, tolled all statutes of limitation, and any applicable statute would commence to run only after the making of the demand provided for in Judge Patterson's order, for until then there would not be any basis for a claim for a return of a voluntary payment made under mistake. Cf. Southwick v. First National Bank, 84 N.Y. 420, 430, and Sharkey v. Mansfield, 90 N.Y. 227, 229, 43 Am.Rep. 161.

The payments made and assets delivered under Judge Patterson's order are sufficiently detailed in the Findings of Fact herein.

On August 3, 1939, the Circuit Court of Appeals for this Circuit decided the case of Downey v. City of Yonkers, 2 Cir., 106 F.2d 69, affirming a decision of Judge Knight, sitting by assignment in this District, and thereafter, on September 16, 1939, the present receiver made demand for return of the excess amount made available—according to the Receiver of the Bank under mistake of law—to the Town of Pelham as a preferred creditor, in the sum of $17,829.27.

The receiver's demand was not honored, and on April 4, 1940 he instituted the present action for the amount demanded with interest.

VI. Title 12 of the United States Code, Section 90, reads as follows:

"§ 90. *Depositaries of public moneys and financial agents of Government*

"All national banking associations, designated for that purpose by the Secretary of the Treasury, shall be depositaries of public money, under such regulations as may be prescribed by the Secretary; and they may also be employed as financial agents of the Government; and they shall perform all such reasonable duties, as depositaries of public money and financial agents of the Government, as may be required of them. The Secretary of the Treasury shall require the associations thus designated to give satisfactory security, by the deposit of United States bonds and otherwise, for the safe-keeping and prompt payment of the public money deposited with them, and for the faithful performance of their duties as financial agents of the Government: * * *

"Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

VII. How this statute operates was well illustrated, I think, in connection with the deposit of securities made by the Baltimore Trust Company in a case which was before me some years ago. Bradford v. Chase National Bank, D.C., 24 F.Supp. 28, 29, at 33. There was not any appeal from my decision in respect of the Baltimore Trust Company in that cause, was appealed by other plaintiffs, and affirmed in the Circuit Court of Appeals for this Circuit—sub nomine Berger et al. v. Chase National Bank, 2 Cir., 105 F.2d 1001. This decision was in turn affirmed, without opinion in 309 U.S. 632, 60 S.Ct. 707, 84 L.Ed. 990.

There has not been given to the banks and trust companies of New York State any general power to pledge their assets as against the deposit of public moneys of the state or political subdivisions thereof, as was done by the State of Maryland, as shown by the Bradford case, but such power has been conferred—if I may so express it—in granulated form and approached from the depositor's end of the

banking relationship, for there are many statutes which permit the exaction of a pledge of securities from a depositary of public funds. E. g. State Finance Law, Section 105(A), (B) and (C); County Law, Section 145; Greater New York Charter, Section 196, L. 1901 Chapter 466, as amended by Laws of 1917, chapter 617; Charter of City of Rochester (1930), Section 214; Charter of City of Buffalo (1927), Section 114; and finally the Town Law, Section 64(1) as amended to date, with which only we are herein concerned.

Section 64(1) of the Town Law reads as follows (italics mine):

"§ 64. *General powers of town boards*

"Subject to law and the provisions of this chapter, the town board of every town:

"1. Control of town finances. Shall have the general management and control of the finances of the town and shall designate by resolution the banks or trust companies of this state in which the supervisor, town clerk, tax collector, tax receiver, and trustees of the freeholders and commonalty of a town shall deposit all moneys coming into their hands by virtue of their offices. The banks or trust companies designated by the town board as depositaries for such moneys may include banks or trust companies of which members of the town board or other town officers are officers, directors or stockholders. Such designation and deposit of the moneys shall release the supervisor and such other town officers and their sureties from any liability for loss of such moneys by reason of the default or insolvency of any such depositary. The town board may require any bank or trust company so designated in which such funds are on deposit or are to be deposited to deliver to the town board a surety bond payable to the town, executed by a surety company authorized to transact business in this state and securing to the town the payment of such deposits and the agreed interest thereon; or *in lieu of a depositary bond, may require any bank or trust company to deposit with such board the bonds or certificates of the United States, of the state of New York or any county, town, city, village or school district of the state of New York as security for such funds so deposited* but such bonds or certificates shall be subject to the approval of the town board and shall be deposited in such place and held under such conditions as the town board may determine. *All acts done prior to the effective date of this section which would have been valid hereunder are hereby validated."*

This Section 64, subdivision 1 reads as amended under and by the Laws of 1933, chapter 751, Laws of 1934, chapter 675, Sec. 3, Laws of 1937, chapter 468, and the Laws of 1938, chapter 275, Sec. 5, in effect March 31, 1938.

The last sentence of Section 64, subdivision 1, above quoted, was added in 1937 by Chapter 468 of the Laws of that year.

VIII. It is to be implied from the Town Law of New York State, as now amended, not only that the financial executive of a town may exact a pledge of securities from a depositary of public moneys and that such a depositary may validly give such pledge, Cf. Berger v. Chase National Bank, 2 Cir., 105 F.2d 1001, 1004, 1005, affirmed, without opinion, 309 U.S. 632, 60 S.Ct. 707, 84 L.Ed. 990, but that former transactions are also validated. Cf. McNair v. Knott, 302 U.S. 369, 372-374, 58 S.Ct. 245, 82 L.Ed. 307.

The result reached in this comment is consistent with the State Court decisions of Mr. Justice Love in Matter of Bank of Spencerport, 1932, 143 Misc. 196, 255 N.Y.S. 482, and Mr. Justice Rodenbeck in Matter of Application of Joseph A. Broderick, 140 Misc. 861, 252 N.Y.S. 68, and with the decision of Judge Inch in the United States District Court for the Eastern District of New York in Hellawell v. Town of Hempstead, 1935, 10 F. Supp. 771, although those Judges did not have my advantage of having before them the later amendments of the Town Law—above quoted—on which I am placing my principal reliance in this cause.

IX. In view of the decision at which I have arrived, it is unnecessary to consider the third party action by the Town of Pelham against the Employers' Liability Assurance Corporation, Ltd., and I do not deal with the agreed facts therein or express any opinion thereon.

X. As under Rule 54(d) of the Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c, costs are discretionary with the Court, and as I do not think either the Receiver or the Town of Pelham should be mulcted in costs, I shall not allow costs herein.

## Conclusions of Law

XI. Accordingly my conclusions of law herein are:

1. That the original complaint herein should be dismissed without costs, and, consequently

2. That the third party complaint should be dismissed without costs.

Let judgment be entered in accordance herewith.