### In the Matter of the BANK OF SPENCERPORT.

Supreme Court, Monroe County, January 30, 1932.

*Hubbell, Taylor, Goodwin, Nixon & Hargrave*, for State Superintendent of Banks.

*James E. Cuff, amicus curiae*, for supervisor of town of Ogden and for town of Ogden.

*Webster & Smith, amici curiae*, for commissioners of West Gates Water District.

LOVE, J. The petitioner herein asks an order of separate instructions from the court as to his duty as liquidator of the Bank

of Spencerport in the cases of pledges for deposits in said bank by the supervisor of the town of Ogden, Monroe county, and by the West Gates Water District.

There seems to be no statute directing or permitting the pledge of bank assets in such cases, nor does there seem to be any statute prohibiting the practice, which has grown up, to treat such pledges in security of public funds as valid agreements.

In the case of *Smith* v. *Baltimore & Ohio Railroad Company* ([D. C.] 48 F. [2d] 861) the pledges were made to secure the deposit of private funds belonging to said railroad company, and seem to me clearly distinguishable. The inequity of such a practice undoubtedly accounts for its scant use in the past. It would offer great opportunity for favoritism and injustice to secure any portion of the deposit of private funds as against other depositors and other general creditors.

Security for the deposit of public funds, on the other hand, is demanded by statute in some instances and by general practice of long standing in others. Undoubtedly the failure to provide, by statute, for security of the deposits of a supervisor is due more to the fact that comparatively insignificant sums were handled by supervisors until late years when what amounts to city development of real estate in many towns of Monroe and other counties of the State changed the complexion of matters. Even the fees allowed supervisors remain until enormous sums have been paid them in single years, sums out of all proportion to the work done. In towns that have not had such development, where small totals are still the order, fees allowed are still near a point of adequacy.

As large sums came into the hands of some supervisors they naturally demanded security for the deposit of such sums and very properly declined to assume the risk, in good or bad financial times. Bad financial times, of course, cause the presentation of the request for instructions herein.

I do not believe that this general practice, arising without legislative direction or prohibition, should be disturbed. In addition, under our State and municipal laws, approval and requirement of the practice as to many officers are indicated.

It would as well seem to me that equitable principles would not apply against such deposits of security but rather in favor of them.

There seems to be no claim whatsoever that there was any taint of any sort connected with such deposits or pledges. Insolvency or contemplation thereof does not appear to have been in the offing at any stage preliminary to its actual coming into existence. That being so, I cannot see how the liquidator is in any better position to deny the security or to claim the agreement made between the bank,

the depositor and the depositary of the security is invalid, than the Bank of Spencerport was at any time before its liquidation became necessary. In *Parks* v. *Knapp* ([C. C. A.] 29 F. [2d] 547) the pledges were made in contemplation of insolvency.

I feel that the bank had complete power, in the conduct of its business, to pledge securities to secure the deposit of public moneys. In the above-cited case (48 F. [2d] 861, 867), a case of the securing of private deposits, the court says: " There seems to have always been in the United States, and in some States, a marked distinction made between the security which a bank may give for a public deposit as distinguished from private deposits. The Comptroller seems to have consistently held that national banks may pledge its assets as securities for public deposits (See Report 1657, House of Representatives, 71st Congress, 2d Session, to accompany Senate bill 486), while he has always taken the position that national banks do not possess this power as to private deposits." And this, though the power was but an implied one.

State courts are in conflict on this question, and the statutes of this State are silent.

The liquidator, it is true, has a duty to protect the depositors, but I do not believe his position can be made stronger thereby to repudiate an agreement which I believe the bank had power to make not only, but was undoubtedly happy to make, in the belief that the bank and, of course, all connected with it as stockholders and depositors would be the gainers.

The case of *Smith* v. *Lansing* (22 N. Y. 520, 534), seemingly the only case in the Court of Appeals upon this question, concerned the deposit of State funds. It is there stated: " The State, as we know, requires security to be given, and any other depositor may require it."

It would seem that even a depositor of private funds might require security under that holding. The bank, so requested, would undoubtedly act upon such request in due course of business under its corporate powers to do a banking business and decide whether to do so or not. The danger and inequity would undoubtedly bring about a negative decision on practical grounds, but the very procedure would show at least a belief in their power and right to give security, if they so decided. It seems to me that the reason no such practice has grown up is a practical one only, as to private funds, but that giving security for the deposit of public funds has become the general practice without question of a bank's right to do so.

Mention is made in petitioner's brief that the Legislature has not yet gone as far in the Town Law, section 101, as in other State laws in putting this practice into our statutes as a matter required by

law.  The raising of the question of practice, however, has caused the introduction of bills to make this practice an act required by law (Assembly Bill No. 49, Int. 49, to amend the Town Law, and Assembly Bill No. 48, Int. No. 48, to amend the County Law).* The present statutory silence does not seem to me controlling under all the circumstances here found.

There is statutory provision (section 101 of the Town Law) for the supervisor to obtain a surety bond of a solvent surety company to secure the safety of town funds deposited by him.  It is not too far a cry possibly to imply here that taking securities duly given him by proper action of the authorized officers of a bank is therein authorized.  Admittedly that is a question, as " surety bond " is the language.

It would seem to be a matter of public policy growing up out of a general practice and undisturbed by the courts, as yet, for a bank to pledge its securities for the deposit of public funds.

It would seem to be within the legal power of the bank to make such an agreement, and that the liquidator may not repudiate it.

It is the instruction of this court to the petitioner that he should recognize the pledges made by the Bank of Spencerport to secure the deposits of the supervisor of Ogden as valid.

For a separate instruction as to the pledge made to secure the deposit of the West Gates Water District, the petitioner is advised that he should recognize such pledge as valid on the same reasoning.

Let an order be entered accordingly.