**DOWNEY v. CITY OF YONKERS and three other cases.**
**Nos. 230–233.**

Circuit Court of Appeals, Second Circuit.
Aug. 3, 1939.

Writ of Certiorari Granted Dec. 18, 1939.

See 60 S.Ct. 298, 84 L.Ed. ——.

Leonard G. McAneny, Corp. Counsel, of Yonkers, N. Y. (Leonard G. McAneny, of Yonkers, N. Y., E. J. Dimock, of New York City, Morris L. Rosenwasser, of Yonkers, N. Y., J. Donald Rawlings, of New York City, and Harold T. Garrity, of Yonkers, N. Y., of counsel), for appellants.

Benjamin W. Moore, of Yonkers, N. Y. (Benjamin W. Moore and Milton L. Romm, both of Yonkers, N. Y., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The legal principles applicable to Action No. 230 against the City of Yonkers are determinative of the issues in the other three cases which need not, therefore, be separately discussed.

This is an action by the receiver of The First National Bank & Trust Company of Yonkers (herein called the Bank) against

The City of Yonkers (herein called the City) to recover fifty per cent of certain money paid out by the Bank, between March 8, 1933, and January 23, 1934, inclusive on the checks of the City. Since September 30, 1929, the Bank has been a national banking corporation organized and existing under the laws of the United States and the City a municipal corporation organized and existing by virtue of the laws of the State of New York.

On March 4, 1933 the City had funds on deposit in checking accounts in the Bank as follows:

| | |
|---|---|
| (1) Treasurer of the City | $275,105.53 |
| (2) City of Yonkers | 1,502.84 |
| (3) Nepperham Sewer Fund of City of Yonkers | 621.88 |

On March 4, 1933, the Governor of the State of New York proclaimed a bank holiday, and on March 6, 1933, the President of the United States proclaimed a bank holiday which was extended by further proclamation on March 9, 1933, Nos. 2039, 2040, 12 U.S.C.A. § 95 note, and ratified by Congress on the latter date. The Bank never reopened for regular business after March 4, 1933, but operated under restrictions imposed by the Secretary of the Treasury until a Conservator was appointed. On March 20, 1933, the Comptroller of the Currency appointed a Conservator of the Bank and on January 23, 1934, appointed a receiver in liquidation. A dividend of 40% was made available to the general depositors of the Bank on December 16, 1933, and a second dividend of 10% was made available on November 3, 1937.

On March 4, 1933, the City held various bonds having a par value of $535,000 which had been delivered to it by the Bank as security for the above three accounts, among others. These bonds, to the amount at par of $534,000, were later returned in connection with withdrawals from the accounts.

By a series of withdrawals beginning on March 8, 1933, and ending on January 23, 1934, the City withdrew almost all of the balance in each of the three accounts as follows:

| | | |
|---|---|---|
| 1. Account with Treasurer of City | | $275,105.53 |
| Withdrawals: | | |
| March 8 to March 19 | $ 89,226.06 | |
| March 20 to March 27 | 67,735.99 | |
| March 28 on | 118,016.99 | |
| Total | | $274,979.04 |
| 2. Account with City of Yonkers | | $ 1,502.84 |

| | | |
|---|---|---|
| Withdrawals: | | |
| May 23 to July 21, 1933 | | 1,502.84 |
| 3. Account with Sewer Fund | | $ 621.88 |
| Withdrawals: | | |
| May 4, 1933 | | 621.88 |

The complainant seeks to recover fifty per cent of the above withdrawals on the ground that they constituted an unlawful preference within Sections 91 and 194, 12 U.S.C.A., the National Bank Act.

■ If the pledge of bonds to secure the deposits was authorized by the National Bank Act, 12 U.S.C.A. § 21 et seq., it is clear that the City had a valid lien on the bonds to the extent of its deposits and this action by the receiver must fail. Lewis v. Fidelity & Deposit Co. 292 U. S. 559, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794; McNair v. Knott, 302 U.S. 369, 58 S.Ct. 245, 82 L.Ed. 307. It is likewise settled that national banks have no implied power to pledge assets to secure either private or public deposits. Texas & Pac. R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777; Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787. Express authority for the pledge made in this case depends upon whether the requirements of the Act of June 25, 1930, 12 U.S.C.A. § 90, have been met. That section provides that: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

■ The purpose of the Act of June 25, 1930, was to equalize the positions of national and state banks in competing for deposits, and is in line with a long series of acts, beginning in 1864, designed to apply the policy of equalization. Lewis v. Fidelity & Deposit Co., 292 U.S. 559, at page 564, 565, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794.

■ It is conceded that there was no express statutory authority in New York authorizing state banks to give security for these deposits during the times involved. In the absence of express enabling statutes state banks in New York are not authorized to pledge assets to secure either private or public deposits, and it is the duty of the Superintendent of Banks to compel them to recover any assets so pledged upon the re-

turn of the deposits when demanded. State Bank of Commerce v. Stone, 261 N.Y. 175, at page 187, 188, 184 N.E. 750, 87 A.L.R. 1449. As was said by Judge Finch in his opinion in City of Mt. Vernon v. Mt. Vernon Trust Co., 270 N.Y. 400, 406, 1 N.E.2d 825, 827: "No question remains that this pledge by the defendant securing the deposit [of public money] was ultra vires as to both parties." So far as the Act of June 25, 1930, may be thought to require an authorization of state banks to make pledges as a prerequisite for pledges by national banks it does not apply here.

■ But the law of New York is that pledges by state banks to secure deposits, even though ultra vires, may not be set aside until the deposits have been repaid in full, whether or not insolvency has intervened. State Bank of Commerce v. Stone, 261 N. Y. 175, 184 N.E. 750, 87 A.L.R. 1449; Mt. Vernon v. Mt. Vernon Trust Co., 270 N.Y. 400, 1 N.E.2d 825. The parties conceded that the law of New York with respect to the effect of an ultra vires pledge does not bring the pledges here within the Act of June 25, 1930. The policy of the statute would appear to lead to the same conclusion. The Act was designed to equalize competition for public deposits and it does not appear to give national banks authority to do what the state banks are forbidden to do and what the State Superintendent of Banks is under a duty to undo. The banks of the State could not give security in a case like this without violating their charters; Congress could not have intended to meet that type of competition. The use of the term "authorized" in the Act accords with this view; a pledge which is "ultra vires" cannot be said to be "authorized".

The City argues, however, that the pledge made by the national bank in this case, even though not authorized and outside the scope of its charter powers, should be given the same effect as State law gives to similar pledges by state banks. Such a result would be contrary to the result reached in Texas & Pac. R. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, and Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787, in which the Court held that a national bank might recover assets which had been pledged to secure deposits even though the depositor would not be paid in full because of supervening insolvency of the bank.

■ The City says that these decisions are not controlling because in neither did it appear that the law of the State where the transaction occurred gave any different effect to an ultra vires pledge by a bank than that given under the federal law. Nevertheless both decisions make it plain that, unless the right to pledge is expressly granted by a federal statute, a pledge to secure deposits in national banks is wholly unauthorized and, as Justice Brandeis said in Texas & Pacific R. v. Pottorff, 291 U.S. 245, 255, 54 S.Ct. 416, 418, 78 L.Ed. 777: "To permit the pledge would be inconsistent with many provisions of the National Bank Act which are designed to ensure, in case of disaster, uniformity in the treatment of depositors and a ratable distribution of assets. * * * This policy of equal treatment was held to preclude, in case of a national bank, even the preference under section 3466 of the Revised Statutes * * * which otherwise is accorded to the United States when its debtor becomes insolvent. Cook County National Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537. The effect of a pledge is to withdraw for the benefit of one depositor part of the fund to which all look for protection."

■ It is true that in spite of the foregoing general policy of the Act, Congress has seen fit to permit national banks to give security to depositors "of the same kind as is authorized by the law of the State", but it seems unreasonable to suppose that the general policy of the National Bank Act to prevent preferences is to be so limited as to permit hypothecations of assets that do not strictly fall within the statutory exceptions to a sound general rule requiring equal distribution of the assets of insolvent banks among all depositors. As we have already said the words "authorized by the law of the State" plainly relate to the authority of state banks under their charters and not to the effect to be given to their ultra vires acts. Under the law of New York, as it existed at the time the Bank became insolvent, there can be no doubt that the pledges were unauthorized. In State Bank of Commerce v. Stone, 261 N.Y. 175, 184 N.E. 750, 87 A.L.R. 1449, and City of Mt. Vernon v. Mt. Vernon Trust Co., 270 N.Y. 400, 1 N.E.2d 825, the Court of Appeals held that enforcement of the law prohibiting pledges to secure deposits lay with the State Superintendent of Banks who, un-

der his statutory powers, should be alert to prevent such pledges and to undo them prior to the occurrence of insolvency. The Supreme Court in Texas & Pacific R. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, evidently felt that the supervisory power of the Comptroller of the Currency was not enough to insure adequate enforcement of the policy to prevent pledges but that they should be treated by the courts as wholly void. The question of the right of a national bank to pledge its assets to secure depositors and the effect to be given to such a pledge when once made are both clearly matters of national concern. The rule in some of the states (including New York) that a bank is estopped to rescind a pledge to a depositor until he is paid in full is directly in the face of the policy attributed to the National Bank Act in Texas & Pacific R. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, and Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787. In this connection see Merchants' National Bank v. Wehrmann, 202 U.S. 295, 26 S.Ct. 613, 50 L.Ed. 1036; Concord First National Bank v. Hawkins, 174 U.S. 364, 372, 19 S.Ct. 739, 43 L.Ed. 1007; California National Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198.

 The rationale of the two cases cited from the New York Court of Appeals appears to be that a banking corporation organized under the laws of the State has certain actual powers outside the powers authorized by its charter and that its exercise of such ultra vires powers may create an estoppel not only against the corporation itself but also against its general creditors. The measure of the powers of a national bank, on the other hand, is the statutory grant and powers not conferred by Congress are denied. The Act under which national banks are organized constitutes a complete system for their government. Cook County Nat. Bank v. United States, 107 U.S. 445, 448, 2 S.Ct. 561, 27 L.Ed. 537; California National Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198. The decision of the Supreme Court in Texas & Pacific R. v. Pottorff, 291 U.S. 245, 260, 261, 54 S.Ct. 416, 78 L.Ed. 777, is based upon a holding that a national bank cannot exercise powers not granted so as to erect an estoppel against the general creditors for whose benefit the limitation of powers was imposed. See Concord First National Bank v. Hawkins, 174 U.S. 364, 19

S.Ct. 739, 43 L.Ed. 1007. If the problem here be viewed as depending upon the powers which a national bank can exercise it seems clear that the extent of its powers must be determined by an interpretation of the federal statute in the light of the policy therein expressed and that views of state courts on the powers of local corporations have no relevance except as Congress expressly makes them applicable. For the foregoing reasons the plaintiff receiver who represents the general creditors is not estopped to set aside the pledge that was made in this case.

The holding in Willing v. Binenstock, 302 U.S. 272, 58 S.Ct. 175, 82 L.Ed. 248, and Scott v. Armstrong, 146 U.S. 499, 510, 13 S.Ct. 148, 36 L.Ed. 1059, that a set-off, allowed under the common law of a State to an insolvent bank is not objectionable as a preference, does not militate against avoiding the pledges here. The transactions in those cases were ones which the banks were authorized to make and the state law was followed because it did not conflict with the policy of the Bank Act. It is one thing to sanction a general rule of law which allows a depositor to set off his deposit against his indebtedness, it is another thing to sanction a preference based on a transaction forbidden by the Act.

 While a national bank in some cases may be under a duty to return benefits it has received as the result of an ultra vires transaction (see First National Bank of Aiken v. Mott Iron Works, 258 U.S. 240, 42 S.Ct. 286, 66 L.Ed. 593; Citizens' Central National Bank v. Appleton, 216 U.S. 196, 30 S.Ct. 364, 54 L.Ed. 443), the rule if applicable here would not help the defendant since it would not be entitled to a preference against the other depositors of the insolvent bank in the absence of tracing a specific res. Texas & Pacific R. v. Pottorff, 291 U.S. 245, 261, 54 S.Ct. 416, 78 L.Ed. 777; cf. Rankin v. Emigh, 218 U.S. 27, 30 S.Ct. 672, 54 L.Ed. 915. It is well settled that the distribution of the assets of an insolvent national bank is governed by federal law and that state laws which attempt to create preferences which arise at the time of insolvency are to be disregarded. Old Company's Lehigh, Inc. v. Meeker, 294 U.S. 227, 55 S.Ct. 392, 79 L.Ed. 876; Jennings v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248; Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700.

■ The City claims that the payments to it prior to the conservatorship were not made "after the commisison of an act of insolvency, or in contemplation thereof * * * with a view to the preference of one creditor to another * * *". The Bank was closed from March 4, 1933, to March 6, 1933, under proclamations by the Governor of New York and the President of the United States. Later it was permitted to operate under restrictions imposed by the Secretary of the Treasury. On March 20 a conservator was appointed with the powers of a receiver as provided in 12 U.S.C.A. § 203. On January 23, 1934, the Comptroller of the Currency on a finding of insolvency appointed a receiver. The Bank never opened for regular business after March 4, 1933. No attempt was made by the appellants to show any change in the Bank's condition after March 4, 1933. We hold that the facts indicated that the Bank would not be able to pay its depositors in due course and the trial court could properly draw the inference that the payments were in violation of 12 U.S.C.A. § 91. See Dehne v. Mine Safety Appliance Co., 3 Cir., 94 F.2d 956; cf. Kullman v. Wooley, 5 Cir., 83 F.2d 129; Willing v. Eveloff, 3 Cir., 94 F.2d 344; Hardee v. Washington Loan & Trust Co., 67 App.D.C. 241, 91 F.2d 314.

■ The payments made by the conservator were recoverable on still another theory because made out of the assets of an insolvent under a mistake of law. LaParr v. City of Rockford, Ill., 7 Cir., 100 F.2d 564; O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146, 152, affirmed, 297 U.S. 383, 56 S.Ct. 517, 80 L.Ed. 733. For the foregoing reasons the judgments in the four cases on appeal are affirmed.