### LOUGHMAN, v. TOWN OF PELHAM (EMPLOYERS LIABILITY ASSUR. CORPORATION, LIMITED, Third-Party Defendant).

### No. 190.

Circuit Court of Appeals, Second Circuit.

March 9, 1942.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

Hardy, Stancliffe & Hardy, of New York City (William F. McDermott and George T. Barker, both of New York City, of counsel), for appellant.

Whitman, Ransom, Coulson & Goetz, of New York City (William L. Ransom and Henry S. Reeder, both of New York City, of counsel), for appellee.

SWAN, Circuit Judge.

This case was tried to the court without a jury upon stipulated facts which are set out in full in the opinion of the district court reported in 41 F.Supp. 584. A short summary will suffice here. As a result of the banking holiday proclaimed in March 1933 the Pelham National Bank was closed on March 4th; it never reopened. Pursuant to the provisions of Title 12 of the United States Code Annotated §§ 192, 203, a conservator of the bank was appointed on March 21 and a receiver on July 21, 1933. The appellant is successor to the original receiver. When the bank closed, the Town of Pelham had on deposit with the bank the sum of $27,862.92. As security for repayment of deposits by the Town the bank had pledged $25,000 of Westchester County bonds, registered in the name of the bank and deposited in escrow under an agreement dated December 28, 1931 between the bank and the Town. Pursuant to the terms of this agreement, the escrow agent delivered the bonds to the Town on October 23, 1933, and thereafter, on November 10, 1933, an order was entered in the district court directing the receiver of the bank to execute a general power under which the bonds could be negotiated and sold. This order, which the receiver did not oppose, expressly provided that execution of the general bond power should not be deemed a waiver of any of the rights of the receiver, and "if it shall later appear" that the Town "was not entitled" to the bonds or their proceeds, then the Town, "upon demand therefor" by the receiver or his successor,

should forthwith pay him "the proceeds of the sale of said bonds with interest thereon from the date of sale thereof." The bonds were registered in the name of the Town Supervisor on November 20, 1933 and were sold on May 3, 1934 for $25,122.99. Thereafter in October 1934 and January 1935 the Town was paid two dividends aggregating $2,749.93. Thus the Town received payment in full of its bank deposit of $27,862.92. As a general creditor without security it would have received dividends of only $10,030.65. For the difference between these two amounts, namely, $17,832.27, the receiver made demand on September 16, 1939 and brought the present action on April 1, 1940. The Town defended on the ground that its security was valid and, if not, the action was barred by the statute of limitations. It brought in as a third party defendant a surety company against which liability over was asserted in case judgment should go against the Town. The district court sustained the validity of the pledge and dismissed the complaint against the Town. The third party complaint was dismissed without prejudice, and the appeal raises no question as to this part of the judgment.

■ Prior to the Act of June 25, 1930, 12 U.S.C.A. § 90, a national bank could not legally pledge assets to secure funds of a state or a political subdivision thereof; thereafter it could do so, if located in a state in which state banks had such power. City of Marion v. Sneeden, 291 U.S. 262, 268, 54 S.Ct. 421, 78 L.Ed. 787. The validity of the pledge under consideration therefore turns on whether the law of New York conferred on state banks authority to pledge assets as security for deposits by a town. Concededly a pledge to secure a deposit of city funds is ultra vires. City of Yonkers v. Downey, 309 U.S. 590, 60 S.Ct. 796, 84 L.Ed. 964; New Rochelle Trust Co. v. White, 283 N.Y. 223, 28 N.E.2d 387. The appellee contends, however, that the law of New York recognizes a distinction in respect to the power of a bank to give security between deposits of town funds and city funds. Reliance is placed upon the decision by Mr. Justice Love sustaining a pledge to secure a deposit of town funds. Matter of Bank of Spencerport, 143 Misc. 196, 255 N.Y.S. 482. This was followed by Judge Inch in Hellawell v. Town of Hempstead, D.C.E.D.N.Y., 10 F.Supp. 771. It might be the duty of this court, "in the absence of more convincing evidence of what the state law is," to accept Mr. Justice Love's interpretation of the state law. Fidelity Trust Co. v. Field, 311 U.S. 169, 178, 61 S.Ct. 176, 178, 85 L.Ed. 109. But we agree with the appellant that subsequent decisions of the highest court of the state show that his decision did not correctly declare the New York law. New Rochelle Trust Co. v. White, 283 N.Y. 223, 228, 28 N.E.2d 387; City of Mt. Vernon v. Mt. Vernon Trust Co., 270 N.Y. 400, 406, 1 N.E.2d 825; State Bank of Commerce v. Stone, 261 N.Y. 175, 184, 184 N.E. 750, 87 A.L.R. 1449; see, also, City of Yonkers v. Downey, 309 U.S. 590, 594, 60 S.Ct. 796, 84 L.Ed. 964. These opinions state without qualification that neither under statute nor the common law do state banks have power to pledge assets as security for deposits, "even where the deposits are made by a municipal corporation." [283 N.Y. 223, 28 N.E. 388.] It is true that none of these cases involved a deposit of town funds; but we can see no sound reason to distinguish between town and city deposits, nor did Mr. Justice Love make any such distinction in his opinion. He relied upon the absence of statutory prohibition, the "general practice" of banks to give security for the deposit of public funds and the absence of judicial disapproval of such practice. He did, it is true, refer to section 101 of the Town Law of 1909, Consol.Laws N.Y.1909, c. 62, which authorized the supervisor of any town to purchase at the town's expense a surety bond to secure the safety of town funds deposited in a state bank. This is a far cry from a statute authorizing a bank to pledge its assets, and we do not read Justice Love's opinion as construing section 101 to give such authority. He mentioned the statute merely as a makeweight in support of the argument that the public policy of the state did not forbid the general practice to which he referred.

■ In sustaining the validity of the pledge in suit, the district judge placed principal reliance upon amendments to the Town Law, Consol.Laws N.Y., c. 62, enacted subsequently to the closing of the bank. See Ch. 751, Laws of 1933 (effective January 1, 1934); Ch. 468, Laws of 1937, amending Town Law § 64, subd. 1. These amendments authorized the town board to require a bank in which town funds were deposited to give security, and the 1937 amendment purported to validate "all acts done prior to the effective date of this section which would have been valid hereunder." Sec. 1, Ch. 468, Laws of 1937. They cannot be

given retroactive effect as against the bank's receiver. The appointment of a receiver in July 1933 seized the bank's assets for "ratable" distribution in accordance with the provisions of 12 U.S.C.A. § 194. This requires that dividends be declared proportionately upon the amount of all claims as they stood at the date of insolvency. American Surety Co. v. Bethlehem Nat. Bank, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. ——. It is well settled that state statutes which attempt to create preferences arising upon the bank's insolvency must be disregarded. Old Company's Lehigh v. Meeker, 294 U.S. 227, 230, 55 S.Ct. 392, 79 L.Ed. 876; Downey v. City of Yonkers, 2 Cir., 106 F.2d 69, 73, affirmed 309 U.S. 590, 60 S.Ct. 796, 84 L.Ed. 964. A fortiori preferences cannot be created by retroactive state legislation enacted subsequent to the receiver's appointment. McNair v. Knott, 302 U.S. 369, 58 S.Ct. 245, 82 L.Ed. 307, relied upon by the appellee, contains nothing to the contrary. There the question was whether the Act of June 25, 1930, 12 U.S.C.A. § 90, validated a prior pledge of assets as security for a deposit of county funds. It was held that it did, but the bank was not closed until October 18, 1930, several months after the enactment of the enabling amendment. In City of Fort Worth v. McCamey, 5 Cir., 93 F.2d 964, 969, certiorari denied 304 U.S. 571, 58 S.Ct. 1041, 82 L.Ed. 1535, where the bank closed prior to June 25, 1930, the pledge was not validated because "on the appointment of a receiver the rights of everyone concerned become fixed." To the same effect are Webb v. American Surety Co., 5 Cir., 88 F.2d 171, and Ross v. Lee, D.C.S.D.Fla., 15 F.Supp. 972; see 112 A.L.R. 483, 484. We are constrained to hold that the bank's pledge to the Town was ultra vires.

■ There remains for consideration the question whether dismissal of the complaint can be sustained under the defense of limitations. The appellant first contends that the order of November 10, 1933, entered upon the Town's motion, tolled all statutes of limitations and required a demand by the receiver before any action could be commenced to reach the bonds or their proceeds. This argument must fail. The order provided that execution of the general bond power should prejudice none of the receiver's rights; it contemplated the possibility of a suit in which it might "later appear" that the Town was not entitled to the bonds or their proceeds. A suit to re-cover possession of the bonds might have been brought the next day; the order contained no restraint. And if the district court could lawfully impose as a condition upon the receiver's right to collect the bank's assets that he first make a demand upon the Town (which we do not decide), the right to make such demand arose immediately and his delay in making it would not defer the running of the applicable statute of limitations. N.Y. Civil Practice Act, sec. 15(1); see Wood v. Young, 141 N.Y. 211, 36 N.E. 193; Watkins v. Madison County Trust & Deposit Co., 2 Cir., 24 F.2d 370, 371. We think that the order is irrelevant to the defense of limitations.

■■ The Town has contended that the applicable statute is either section 65(3) of the Town Law, ch. 399, Laws of 1939, or section 48(1) of the New York Civil Practice Act. The former relates to actions against a town "upon or arising out of a contract." We understand this to refer to actions upon or arising out of actual contracts, not quasi contractual liabilities. The present action is of the latter sort. It is an action for money had and received which the defendant is under an implied obligation to return because its receipt was either forbidden by statute, 12 U.S.C.A. § 91, or obtained under a mistake of law. See Downey v. City of Yonkers, 2 Cir., 106 F.2d 69, 74. To such an action the six year period of section 48(1) of the Civil Practice Act would normally be applicable.

■ So much of the receiver's claim as is grounded on the receipt by the Town of dividends paid under mutual mistake of law is clearly not barred. These payments amounting to $2,749.93 were made less than six years before service of the summons and complaint on April 4, 1940. As to the rest of the claim the question is not so simple.

The Town argues that, if the pledge was ultra vires, the pledgee's possession was tortious ab initio, the bank could have sued to recover the bonds without prior demand for their return, and the statute started running on December 28, 1931. It says that in any event there was a conversion when the bonds were registered in the name of the Town Supervisor on November 20, 1933, and no subsequent conversion by selling them on May 3, 1934 could extend the period of limitations. The receiver, on the other hand, contends that he had a choice of remedies: he could bring an action sounding either in tort for conversion of the

bonds or in assumpsit for money realized on their sale. He chose the latter and, since the cause of action for money had and received did not accrue until receipt of the money, the six year period of limitations had not expired when his suit was commenced.

Whether the mere retention of possession of the bonds under an ultra vires pledge amounts to a conversion by the pledgee—a question much discussed in O'Connell v. Chicago Park District, 376 Ill. 550, 34 N.E. 2d 836, 135 A.L.R. 698—we need not decide. Cf. Chapman v. Lynch, 156 N.Y. 551, 51 N.E. 275; City of Fort Worth v. McCamey, 5 Cir., 93 F.2d 964. At least there was a conversion on November 20, 1933 when the bonds were registered in the name of the Town Supervisor. To recover ·for this conversion an action would have to be brought within six years thereafter, whether the action sounded in tort for conversion, MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co., 193 N.Y. 92, 85 N.E. 801; section 48(3), Civil Practice Act,[1] or in assumpsit. Terry v. Munger, 121 N.Y. 161, 24 N.E. 272, 8 L.R.A. 216, 18 Am.St.Rep. 803; section 48(1), Civil Practice Act. The precise question is whether the receiver can extend the period of limitations by suing for the proceeds of the sale made on May 3, 1934. Of such a situation, a sale following a prior conversion, Professor Keener says in his treatise on Quasi Contracts, page 175: "Since to maintain an action for money had and received in this class of cases, the plaintiff must prove the receipt of money by the defendant as well as a wrongful conversion, his cause of action does not arise until the receipt of the proceeds of the sale; and therefore the statute of limitations begins to run only from that time, and it is no answer to a count for money had and received that since the sale and receipt of the proceeds and before action brought, the right to sue in trover has been barred. The period of limitation in such a case is that applicable to actions of assumpsit."

This thesis has been vigorously disputed by Professor Corbin in Waiver of Tort—Suit in Assumpsit, 19 Yale L.J. 221, 234 et seq. Neither writer cites any New York case precisely in point. Two early Massachusetts cases support Professor Keener, Lamb v. Clark, 5 Pick. 193, 197;

Miller v. Miller, 7 Pick. 133, 19 Am.Dec. 264. So also does a statement in the dissenting opinion of Paige, J., in Schroeppel v. Corning, 6 N.Y. 107, 111, but the actual decision seems to favor Professor Corbin's position. In our opinion the inferences to be drawn from decisions in somewhat analogous cases also support his view. Thus, in MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co., 193 N.Y. 92, 85 N.E. 801, an action was brought by the receiver of a gas company to recover for the conversion of ten of its mortgage bonds. The question in dispute was whether the conversion occurred in 1886, when the bonds were delivered to the defendant as collateral for the personal debt of the secretary of the gas company, or in 1890 when the defendant turned them over to another creditor of the secretary. The action was commenced in 1895. It was barred by the six year statute of limitations if 1886 was the date of conversion but was timely if 1890 was the crucial date. A majority of the court held that the conversion occurred in 1890, but it is implicit in the opinion of the majority, as well as in that of the minority, that if the statute started to run in 1886 the period would not be extended by the converter's later disposition of the bonds in 1890. Again, if the statute has run before the sale, no action in assumpsit will lie for the proceeds of sale. Currier v. Studley, 159 Mass. 17, 33 N.E. 709; Keener, Quasi Contracts, 177. Moreover, in actions for personal injury caused by negligence whether the form of action be ex contractu or ex delicto makes no difference with respect to the statute of limitations. Webber v. Herkimer, etc., R. R. Co., 109 N.Y. 311, 16 N.E. 358; Schmidt v. Merchants Despatch Transp. Co., 270 N.Y. 287, 200 N.E. 824, 104 A.L.R. 450. Likewise, where a person has a choice of remedies, one at law, the other in equity, he may not enlarge the time for suit by electing the equitable remedy if the legal remedy for money had and received was adequate. Hanover Fire Ins. Co. v. Morse Dry Dock & Repair Co., 270 N.Y. 86, 89, 200 N.E. 589; Keys v. Leopold, 241 N.Y. 189, 193, 149 N.E. 828. It might be argued that these cases can be distinguished from that at bar. In them the two causes of action were strictly concurrent; the same facts which constituted the tort

---

[1] By ch. 558, Laws of 1936, the period of limitation for conversion was reduced to three years but the amendment declared that it was not to affect existing causes of action. See section 49(7), Civil Practice Act; Mintzer v. Windsor Lamp Mfg. Co., 175 Misc. 551, 23 N.Y.S.2d 990.

constituted also a breach of the contract so that the two causes of action arose simultaneously, while in the case at bar the conversion occurred several months before assumpsit for the money received by sale of the converted property could have been maintained. But we do not think this distinction is material. As Judge Lehman pointed out in the Schmidt case, 270 N.Y. at page 299, 200 N.E. at page 826, 104 A.L.R. 450, "Each so-called 'separate and distinct cause of action' becomes in effect a 'count' in the allegation of a single wrong; and whether the statute bars recovery under any count depends upon the nature and origin of the liability asserted in that count." In a personal injury action based on negligence, "The nature and origin of the liability asserted is, regardless of form, a liability for damages caused by negligence." 270 N.Y. page 303, 200 N.E. 828, 104 A.L.R. 450. In the case at bar the gist of the action is conversion, even though the form is assumpsit for money received. The plaintiff has suffered but a single wrong for which there can be but one recovery and one satisfaction. The statute of limitations is a statute of repose. It may at times bar the assertion of a just claim, but the legislature has found that such occasional hardship is outweighed by the advantage of outlawing claims which a plaintiff has allowed to become stale. In the light of this policy as exemplified in the decisions we believe the law of New York to be that if the statute of limitations has run against an action sounding in tort for conversion, the plaintiff is also barred from bringing an action sounding in assumpsit based on a subsequent sale of the converted property. This was the holding in O'Connell v. Chicago Park District, 376 Ill. 550, 34 N.E.2d 836, 135 A.L.R. 698, as to the Illinois statute of limitations. The result may be different where there is a breach of an express contract to return upon demand property which has been converted by a bailee without the knowledge of the bailor. Ganley v. Troy City National Bank, 98 N.Y. 487.

The receiver relies heavily upon City of Fort Worth v. McCamey, 5 Cir., 93 F.2d 964. In no event would that case be controlling, as it does not involve the New York statute; but, more than that, it does not present the question which confronts us because the court there held that no conversion of the pledged securities occurred until the sale of them and this happened less than a year before the suit was filed so that neither trover nor assumpsit was barred.

For the reasons above set forth we conclude that the plaintiff was entitled to recover the dividends paid under mutual mistake of law in the amount of $2,749.93 and interest thereon, but was barred from recovery of the proceeds of sale of the bonds. In view of the third party claim asserted against the surety company, the cause should be remanded for further proceedings in conformity with this opinion.

Judgment reversed and cause remanded.