**TOWN OF SAUGERTIES, Plaintiff,**

v.

**EMPLOYERS INSURANCE OF WAU-SAU, a mutual company, and D'Annunzio Constructors Corp., Defendants.**

Nos. 85–CV–1633, 85–CV–1523.

United States District Court,
N.D. New York.

July 19, 1990.

Couch, White Brenner Howard & Feigenbaum (Leslie F. Couch, of counsel), Albany, for plaintiff.

Hart & Hume (Henry James Wallach, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

This action arises out of a contract entered into in 1984 by the Town of Saugerties and a contractor, D'Annunzio Constructors Corp. ("D'Annunzio" or "contractor"), for the construction of a sewer project in the town. Disputes over performance of the contract developed between the town, D'Annunzio, and Employers Insurance of Wausau ("Wausau"), the holder of a performance bond on which D'Annunzio was the principal and the town the obligee. The disputes culminated in two lawsuits that have been consolidated and are now before the court.

In counterclaims against the town, the defendants D'Annunzio and Wausau seek recovery of a sum of money they contend they are owed under a change order in the contract, and/or recovery in quantum meruit for services rendered to the town. The town now moves for summary judgment dismissing the counterclaims on the ground that the defendants failed to comply with Section 65(3) of the New York Town Law, which requires that a party bringing a contract action against a town must first file a notice of claim with the town within six months of the accrual of its cause of action, and must not commence the action until 40 days have elapsed from the filing of the notice of claim.

The defendants argue that a timely notice of claim was filed with the town, and that, in addition, Section 65(3) does not apply to those counterclaims which seek quasi-contractual remedies. The defendants cross-move for leave to amend their counterclaims to include an allegation that a timely notice of claim was filed, and for the court to deem that the 40–day waiting period for commencement of their action has passed.

### Background

On June 25, 1984, the plaintiff, Town of Saugerties, entered into a contract with defendant D'Annunzio for the construction of a sewer project. In connection with the contract, defendant Wausau, as the surety, issued performance and payment bonds on behalf of the contractor, as principal, and in favor of the town, as obligee. The parties agree that the contractor entered into performance of the contract, and that disputes eventually arose over, among other things, the contractor's contention that certain subsurface conditions unknown to the parties at the time of contracting made it impossible for the contractor to complete the contract as originally agreed.

On November 22, 1985, the contractor commenced an action in this court against the town, seeking damages for (1) moneys due but unpaid under the contract; (2) extra work performed at the request of the town; and (3) interference and other acts by the town including the careless and negligent preparation of plans and specifications for the contract. See Wallach affid., Exh. 1. On or about December 20, 1985, the town commenced an action against defendant Wausau, as surety on the performance bonds. Around this time, the contractor stopped work on the project.

Negotiations began between the town and D'Annunzio toward resolution of the disputes and the two pending lawsuits. As a result of the negotiations, the town and D'Annunzio entered into a change order, known as Change Order 3–12. The important alterations made by the change order were that the time to complete the contract was extended to December 1, 1987, and that the contract was changed from a unit price contract to a stipulated sum contract, with the contract amount set at $3,600,-000.00. At the same time, attorneys for

the town, D'Annunzio and Wausau entered into a stipulation signed as "so ordered" by the court and dated September 5, 1987, which, among other things, provided for the dismissal of the two lawsuits upon completion of the work to be performed under the contract, including Change Order 3–12. The contractor then resumed work on the sewer project.

The contractor submitted estimates for payment to the town in October and November 1987. Estimate No. 20, submitted in November, showed that the value of the work completed was $3,600,000.00, the total contract amount. The town, however, withheld payment of approximately $427,-000, because it contended the contractor did not comply with the plans and specifications of the original contract or with Change Order 3–12. Couch affid., para. 21. Nevertheless, the sewer system is functional, and has been used by the town since December 1987.

Through 1988, the town and contractor continued to meet and exchange correspondence regarding work the town felt was required to complete the contract, and the disposition of the $427,000 withheld by the town. For example, in a May 17, 1988, letter from Mr. Wallach, the attorney for the defendants, to Mr. Couch, attorney for the town, Mr. Wallach refers to a meeting at which a settlement proposal was discussed:

> ... The work under the contract has long been completed, the sewer system has been in operation for quite some time, and the Town is holding in excess of $428,000 in contract balances and retainages for reasons which remain unclear to me. At the meeting on March 31, 1988 among representatives of the Town, D'Annunzio and surety, we made what we believed, and still believe, to be a fair, reasonable and practical proposal, namely, that the Town agree to take a $60,000 total credit against the $428,000 remaining to be paid under the contract for all its claims, including, but not limited to, claims for incomplete and defective

work, punchlist items, prospective maintenance, and engineering costs....

Couch affid., Exh. F.

In a letter dated September 8, 1988, from Mr. Wallach to Mr. Couch, Mr. Wallach states:

> The time has come for a decision by the Town with respect to our most recent, and final, settlement proposal.
>
> You have indicated that the Town will accept a credit of $150,000 and I have advised you that D'Annunzio and the Surety will agree to such a credit *provided* that it is in full and final settlement of all matters, claims and disputes of any kind under or in connection with the Contract and performance bond, and that no issues, claims or matters are left open or pending.... Accordingly, you are hereby advised that unless this matter has been resolved among the parties by September 26, 1988, we will proceed to take such action as we deem appropriate, including litigation, to protect and enforce D'Annunzio's and the Surety's interests....

Couch affid., Exh. F.

Again, in a letter dated October 19, 1988, Mr. Wallach writes to Mr. Couch:

> ... D'Annunzio and the Surety renew their offer set forth in my letter of September 8, namely, that they will accept a credit of $150,000 against the contract balance and retainages, in full and final settlement of all matters, claims and disputes of any kind or nature among the parties arising out of or in connection with the Contract and the performance bond, including, but not limited to, all matters involving the DEC and/or EPA.
>
> The Town of Saugerties is hereby advised that unless the Contract is closed out on or before November 7, 1988, on the terms and conditions set forth in my letter of September 8, and above, D'Annunzio and the Surety intend to take such action as they deem appropriate to enforce their rights, including seeking relief from the United States District Court, Northern District of New York, on the grounds that the Town has breached the settlement agreement and

stipulation entered into in connection with the litigation pending in that Court....

Couch affid., Exh. F.

Indeed, in a letter dated November 8, 1988, Mr. Wallach requested the court to schedule a conference to discuss settlement or resumption of litigation:

... The purpose of this letter is to request a conference before the Court to discuss settlement of both the captioned actions and the underlying disputes, or, in the alternative, [if] settlement is not possible, to establish a schedule for the completion of discovery proceedings and the trial of the actions.

... In the circumstances, we respectfully request that the Court schedule a conference in order to discuss settlement of the matter and/or to establish a discovery and trial schedule.

Couch affid., Exh. E.

A conference was scheduled and the parties met with the court on March 8, 1989. In the meantime, the town had declared the contractor in default on the contract on March 2, 1989, by resolution of the town council. At the conference, the parties informed the court that resolution of many of the disputes between the parties might well depend upon how the New York State Department of Environmental Conservation responded to the town's request for funding of the contract and Change Order 3–12. Wallach affid., p. 7. The attorneys for the town and contractor exchanged correspondence over the next few months, dealing primarily with testing to be done on the sewer project to receive reimbursement for part of the cost from the state. *See* Wallach affid., Exh. 3 and 4. In a letter dated August 18, 1989, regarding certain testing being done on the sewer project, Mr. Couch wrote to Mr. Wallach that:

... The Town is taking what steps it can to convince the DEC that even though D'Annunzio did not comply with its contract, or meet the ten state standards, the Federal and State governments should fund the project to the maximum percentage of cost allowed by law. Without the cooperation of your

client or your clients [sic] principal, this funding will not be available.

The Town is also seeking full funding for Change Order 3–12. Again, without cooperation from your client or its principal, this funding will not be available.

Given that Federal and State funding is the only way to mitigate the Town's damages, I don't understand your clients [sic] attitude.

I suggest we schedule a meeting with the Court to get the litigation back on track and dispose of this matter....

Wallach affid., Exh. 5.

Mr. Wallach sent a letter to the court, dated October 5, 1989, summarizing the status of negotiations:

... In response to your letter dated September 27, 1989 requesting counsel to advise you as to the current status of the actions, settlement discussions have so far been unproductive and the status of the matter remains as it was when we last met with Judge McCurn in March, 1989.

In the circumstances, we respectfully request that another pretrial conference be scheduled, in Albany if possible, in mid-November, for the purpose of discussing settlement and/or fixing a timetable for the continuation of the actions....

Wallach affid., Exh. 8.

Another pretrial conference was conducted on December 6, 1989. According to Mr. Wallach in his affidavit, Mr. Couch stated at the meeting that he had met with representatives from the DEC and they had indicated that the DEC might deduct some $390,000 from its funding of the contract. Mr. Couch also stated that the town would not pay any portion of the $427,000 it withheld from the contractor, and that since D'Annunzio and Wausau were unwilling to sign releases, he would continue litigation. The court also fixed dates for the town to amend its complaint to include allegations arising subsequent to service of the original complaint, and for filing of an answer, and conducting discovery and motions.

The town filed an amended complaint on or about January 9, 1990, seeking damages

against the contractor and Wausau in the approximate amount of $2,750,000, and including four causes of action alleging that Change Order 3–12 was void and unenforceable because, among other reasons: (1) the change order was entered into at a time when the town was under severe economic duress; (2) the change order was contrary to public policy; (3) the change order was contrary to public bidding laws; and (4) there was no consideration given for the change order. In the defendants' answer, they asserted four counterclaims. In the first counterclaim, defendants seek to recover $425,000 from the plaintiff under the contract, less an amount defendants estimate at $25,000 for certain "punchlist" items remaining to be performed. The second, third and fourth counterclaims assert quasi-contractual claims for the reasonable value of the services performed and unjust enrichment of the plaintiff, conditioned upon the court's finding that Change Order 3–12 is void and unenforceable.

The defendants did not allege in their answer or counterclaims that they timely filed a notice of claim with the town, which is a jurisdictional prerequisite to bringing a contract action against a town. N.Y. Town Law § 65(3); *Wa–Wa–Yanda, Inc. v. Town of Islip*, 25 A.D.2d 762, 269 N.Y.S.2d 154 (2d Dept.1966); *aff'd* 21 N.Y.2d 1013, 290 N.Y.S.2d 932, 238 N.E.2d 332 (1968); *Montauk–Caribbean Airways, Inc. v. Hope*, 132 Misc.2d 496, 505 N.Y.S.2d 297 (Sup.Ct. Suffolk Co.), *cert. denied*, 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986); *Franza's Universal Scrap Metal, Inc. v. Town of Islip*, 89 A.D.2d 843, 453 N.Y.S.2d 24 (2d Dept.1982). Mr. Wallach states in his affidavit, however, that a notice of claim was filed with the town on or about April 4, 1990. The town now moves to dismiss the counterclaims on the ground that no notice of claim was filed, and that the time within which the defendants could file a notice of claim has expired. The defendants contend, on the other hand, that their notice of claim was timely filed, and that their cause of action for the difference, if any, between the amount which would have been payable to D'Annunzio if the contract had been

completed, and liquidated damages and the town's cost of completing the work allegedly uncompleted, has not yet accrued. The defendants also argue that the notice provisions of Town Law § 65(3) do not apply to the quasi-contractual remedies sought in the second, third and fourth counterclaims. Defendants cross-move for leave to amend their counterclaims to assert that a timely notice of claim was filed, and asking the court to deem the 40–day waiting period under Town Law Section 65(3) has elapsed.

## Discussion

New York Town Law § 65(3) provides:

On and after the first day of September, nineteen hundred thirty-nine, no action shall be maintained against a town upon or arising out of a contract entered into by the town unless the same shall be commenced within eighteen months after the cause of action thereof shall have accrued, nor unless a written verified claim shall have been filed with the town clerk within six months after the cause of action shall have accrued, but no such action shall be brought upon any such claim until forty days have elapsed after the filing of the claim in the office of the town clerk.

N.Y. Town Law § 65(3).

As discussed *supra*, the timely filing of a notice of claim is a condition precedent to filing suit against a town, and failure to file a timely notice of claim is a jurisdictional bar to an action. *See, e.g., Wa–Wa–Yanda, Inc.*, 25 A.D.2d 762, 269 N.Y.S.2d 154; *Montauk–Caribbean Airways*, 132 Misc.2d 496, 505 N.Y.S.2d 297; *Franza's Universal Scrap Metal*, 89 A.D.2d 843, 453 N.Y.S.2d 24. In addition, Town Law § 65(3), unlike some other notice statutes, contains no provision allowing the court to excuse compliance with its requirements, and the court lacks authority to do so. *See Aqua Dredge, Inc. v. Little Harbor Sound Civic Improvement Ass'n*, 114 A.D.2d 825, 826, 494 N.Y.S.2d 736, 737 (2d Dept.1985). The town contended that the counterclaims should be dismissed because no notice of claim has been filed. It should be noted

here that the defendants allege a notice of claim was filed with the town clerk on or about April 4, 1990, two days before the filing of the town's motion to dismiss, and that counsel for the town conceded at oral argument that a notice of claim has been filed. The court will proceed, therefore, under the assumption that a notice of claim was filed on April 4, 1990.

The town contends, nevertheless, that defendants' cause of action under the contract, if any, accrued when the contractor submitted his final request for payment on the project on November 24, 1987, or in any event, no later than March 2, 1989, when the town declared the contractor in default under the contract. Thus, if the defendants' cause of action accrued on either of these dates, or any date in between, even the notice of claim filed on April 4, 1990, would not have been filed within six months of accrual, and would therefore be untimely.

The defendants contend, however, that the parties continued negotiations on a settlement of their contractual disputes after the contractor's final request for payment and the town's declaration of default by the contractor, up until the pretrial conference on December 6, 1989, and therefore, the April 4, 1990, notice of claim was timely filed. In New York, a contractor's cause of action accrues when he should have viewed his claim as being rejected. *Arnell Const. Corp. v. Village of North Tarrytown*, 100 A.D.2d 562, 473 N.Y.S.2d 489, 491 (2d Dept.1984), *aff'd*, 64 N.Y.2d 916, 488 N.Y.S.2d 379, 477 N.E.2d 620 (1985); *Memphis Const., Inc. v. Village of Moravia*, 59 A.D.2d 646, 398 N.Y.S.2d 386, 389 (4th Dept.1977). The town relies on *Arnell Const. Corp.*, in which the court held that a contractor's cause of action accrued when his request for final payment was rejected by the village, and the village indicated it would be willing to pay a lesser amount. The court ruled that the contractor should have viewed its claim as having been rejected on the date its request for final payment was denied, and that a notice of claim filed over two years later was untimely under CPLR § 9802, which contains the notice of claim provision that applies to villages.

The contractor's action was thus barred, and its claim was dismissed.

*Arnell Const. Corp.* is distinguishable from the case at bar, however, in that the defendants assert that settlement negotiations continued up until December 6, 1989, after the contractor submitted its final payment and after the town's declaration of the contractor's default. It is important to note here that, although the contractor did not receive payment on his final request for payment, the papers do not show any formal rejection of the contractor's claim, at least until the town's declaration of default on March 2, 1989. The court must determine, then, if at any time, the contractor "should have viewed his claim as having been constructively rejected, thus giving rise to the accrual of a cause of action." *Memphis Const., Inc.*, 59 A.D.2d 646, 398 N.Y.S.2d at 388 (citing *City of New York v. State of New York*, 40 N.Y.2d 659, 668, 389 N.Y.S.2d 332, 339, 357 N.E.2d 988, 995 (1976)).

Certainly, in most cases, the town's declaration that the contractor was in default would indicate that the contractor "possesse[d] the legal right to be paid and to enforce its right to payment in court," thus giving rise to the accrual of the contractor's cause of action. *City of New York*, 40 N.Y.2d at 668, 389 N.Y.S.2d at 339, 357 N.E.2d at 995. However, as indicated by the correspondence between the parties, they continued thereafter to seek reimbursement from the state under Change Order 3–12, a part of the contract, and the part under which payment is claimed, in hopes of settling their disputes without resort to the judicial process. In the court's view, and as the Court of Appeals noted in *City of New York*, "it cannot be said as a matter of law that the [contractor's] failure to regard its claims as having been rejected earlier than it did was not justified by the facts surrounding" its communications with the town. *Id.* at 669, 389 N.Y.S.2d at 340, 357 N.E.2d at 996. The rulings by the courts in *City of New York* and *Memphis Const., Inc.* indicate that, although the notice provisions must be strictly adhered to, a party should not be prejudiced by its

pursuit of settlement when the circumstances suggest it is possible. *See City of New York*, 40 N.Y.2d at 669–70, 389 N.Y. S.2d at 340–41, 357 N.E.2d at 996–97; *Memphis Const., Inc.*, 59 A.D.2d 646, 398 N.Y.S.2d at 388; *see also J.G. Georg Serv. Corp. v. Town of Summit*, 28 A.D.2d 578, 279 N.Y.S.2d 674 (3d Dept.1967). As the Court of Appeals stated in *City of New York*, "... a disagreement which was never resolved and which was treated by the parties as on-going and capable of nonjudicial resolution ... argue[s] strongly that the city acted properly in basing its conduct on the supposition that something could be worked out short of a lawsuit." *Id.* at 669, 389 N.Y.S.2d at 340, 357 N.E.2d at 996. Concededly, both *City of New York* and *Memphis Const., Inc.* are distinguishable in that they involved delays by the *municipalities* in performing audits which were statutory conditions precedent to the plaintiffs' claims. However, this difference does not bear on those courts' position that negotiations or other circumstances suggesting the possibility of settlement may delay the accrual of the claimant's cause of action.

The town also points to the holding in *Memphis Const., Inc.* that the plaintiff's claims there were constructively rejected and its claims thus accrued on the date set for the commencement of litigation by the plaintiff's attorney. Plaintiff's attorney wrote to defendant's attorney that: "I now say that we will commence an action against the Village of Moravia in 30 days from this date." *Id.*, 59 A.D.2d 646, 398 N.Y.S.2d at 388. The town here notes that the defendants' attorney sent three letters in 1988 threatening the commencement of litigation. However, the defendants refrained from doing so, apparently because circumstances, including the scheduling of a conference with the court and continuing communications with the state regarding reimbursement, indicated the possibility of settlement.

■ Notwithstanding the foregoing, the defendants also argue that their claim to the difference between the amount which would have been payable under the contract to D'Annunzio if it had completed the work, and liquidated damages and the town's cost of completing the unfinished work, pursuant to Arts. 51 and 52 of the contract,[1] has not yet accrued. Defendants maintain that the town has not advised them that such work has been completed or of its cost. Wallach affid., p. 9. This assertion is not addressed by the town in reply papers, but the defendants appear to be correct in asserting that a cause of

---

**1.** According to the Wallach affidavit, Art. 51 provides:

*Unfinished Work Completed by Owner.*

Upon such declaration of default under the provisions of Art. 48, the Owner shall, by written notice, order the Contractor not to begin or not to resume, or to discontinue all work under this Contract, or any part of such work, and thereupon the Contractor shall not begin, or shall not resume, or shall discontinue all work or such part thereof, and the Owner shall thereupon have the power, in the manner prescribed by law, to contract for the completion of the work of such part thereof, or to place such and so many persons as it may deem advisable by contract or otherwise to work at and to complete the work or part thereof as the Owner may direct, or to place under contract, and take possession of and use any or all plant, tools, appliances, equipment, supplies, property and materials as the Owner may find upon the site, and to procure or cause to be procured, by contract or otherwise, all other plant, tools, appliances, equipment, supplies and property, and materials for the completion of the same, and to charge the whole expense for the completion of the work, or any part thereof, to the Contractor.

Art. 52 provides:

*Payments for Unfinished Work Completed by Owner.*

The expense so charged, as prescribed in the preceding Article, and also liquidated damages for delay in the completion of the work, if any, as provided, shall be deducted and paid by the Owner out of such monies as may be then due the Contractor, or may at any time thereafter become due under and by virtue of this Contract or any part thereof. In case such expense and liquidated damages, if any, shall exceed the sum which would have been payable under this Contract, if the same had been completed by the Contractor, the Contractor shall pay the amount of such excess to the Owner; *and in case such expense and liquidated damages, if any, shall be less than the sum which would be payable to the Contractor, if the Contractor had completed the Contract, he shall be entitled to the difference, subject to all the other terms, covenants, and conditions of this Contract.*

Wallach affid., p. 8 (emphasis added).

action for such amounts has not yet accrued, and thus they would retain the right to that claim.

 With respect to defendants' second, third and fourth counterclaims, the defendants correctly contend that the notice provisions of Town Law § 65(3) do not apply to them, since they are for quasi-contractual remedies in quantum meruit and for unjust enrichment in the event Change Order 3–12 is declared void and unenforceable. *Loughman v. Town of Pelham,* 126 F.2d 714, 717 (2d Cir.1942); *cf. Accredited Demolition Const. Corp. v. City of Yonkers,* 37 A.D.2d 708, 324 N.Y.S.2d 377 (2d Dept.1971) (in action grounded in quasi-contractual principle of unjust enrichment, plaintiff need not comply with notice provisions of Gen.Mun. Law § 50–e); *Rochester–Genesee Regional Transp. Dist. v. Trans World Airlines, Inc.,* 86 Misc.2d 1011, 383 N.Y.S.2d 856 (Sup.Ct. Monroe Co.1976) (filing of notice of claim under CPLR § 203 unnecessary where defense founded on equitable principles). In addition, as defendants' counsel urged at oral argument, the causes of action in the second, third and fourth counterclaims cannot be said to have accrued until the plaintiff raised claims in its amended complaint in January 1990 that Change Order 3–12 was void. The defendants had no basis to raise counterclaims with respect to Change Order 3–12 until that time. Thus, even if the notice of claim provision was to apply to these counterclaims, which in the opinion of the court it does not, the filing of a notice of claim on April 4, 1990, would have been timely.

 Finally, although the town does not raise this issue, the defendants apparently run afoul of the provision in Town Law § 65(3) which requires that 40 days must elapse from the filing of the notice of claim before commencement of the action. Here, the notice of claim was filed on April 4, 1990, approximately two months *after* defendants' answer and counterclaims were filed. Although the court could locate no caselaw on this point pertaining to the Town Law, the courts have ruled that, under the analogous provisions of Gen.Mun.

Law § 50–i, the service of a notice of claim after, rather than prior to, commencement of the action is a procedural defect only, and is not fatal to the cause of action. *Runyan v. Bd. of Educ.,* 121 A.D.2d 708, 504 N.Y.S.2d 146, 147 (2d Dept.1986); *Kelly v. Kane,* 98 A.D.2d 861, 470 N.Y.S.2d 816, 818 (3d Dept.1983). Thus, the court may allow the defect to be corrected if there is no showing of prejudice to the other party. *Id.* Since no showing of prejudice has been made here, the court will allow this procedural defect to be corrected.

### Conclusion

By reason of the foregoing, the town's motion for summary judgment dismissing the counterclaims is denied. Conversely, the defendants' cross-motion for leave to amend the counterclaims to include the allegation that a notice of claim was filed, and for the court to deem the 40–day period for commencement of the action after the filing of the notice of claim as elapsed, is granted.

IT IS SO ORDERED.